STATE v. WILLIE F. WEBSTER.

(Filed 20 December, 1940.)

1. **Gaming § 5—Evidence of defendant's guilt of operating gambling house and illegal possession of gambling devices held sufficient.**

Evidence that defendant sold cigars, soft drinks and magazines in the front part of his shop, and that he had partitioned off a back room furnished so people could sit or lounge, and watch an electrically operated scoreboard, that in repeated raids in hot weather the stove in the back room was hot and contained paper ashes, and that on two occasions slips of paper which had been pulled from tip boards or baseball boards were found on the floor, and that on the last raid, tip boards or baseball boards were found concealed in a secret hiding place in the room, *is held* sufficient to be submitted to the jury on the charge of operating a gambling house and on the charge of illegal possession of gambling devices.

2. **Gaming § 6: Criminal Law § 53e—**

A reference in the charge to "these gambling devices" will not be held prejudicial as an expression of opinion on the evidence when it is apparent that the charge referred abstractly to the devices mentioned in the warrant and not to those about which evidence had been taken.

3. **Same—**

A charge that a punchboard and a tip book are the same under the statute and "that if you find this defendant guilty" will not be held for error as an expression of opinion on the evidence when the phrase is immediately followed by an instruction that in order to convict, the jury must find beyond a reasonable doubt that the tip boards were gambling devices and were in defendant's possession.

4. **Criminal Law § 78e—**

An exception to the charge on the ground that it failed to explain and apply the law to the evidence as required by C. S., 564, may be disregarded as a broadside exception.

5. **Gaming § 6—**

In a prosecution for maintaining a gambling house and for illegal possession of gambling devices, the failure of the court to define "gambling" or "gambling device" will not be held for error in the absence of a prayer for special instructions, since these terms have a definite and well recognized meaning which is the same in law as well as in common usage.

---

STATE *v.* WEBSTER.

APPEAL by defendant from *Harris, J.,* at March Criminal Term, 1940, of DURHAM. No error.

The defendant was brought to trial upon the following warrants, consolidated for the purpose of trial:

"NORTH CAROLINA,                          IN THE RECORDER'S COURT.
DURHAM COUNTY.

THE STATE                              WARRANT FOR
v.                          Illegal Poss. and Operating
WILLIE F. WEBSTER          ·              a Gambling Device.

WARRANT No. 1

"B. L. LLOYD, being duly sworn on information, says that Willie F. Webster, on or about the 28th day of July, 1939, with force and arms, at and in the County aforesaid, and within Durham County, did willfully, maliciously and unlawfully possess and have for the purpose of operating and did then and there operate and cause to be operated a certain gambling device known as Tip Boards or Base Ball Boards, the same not paying and giving the person playing or operating the same in return in market value each and every time played or operated, against the statute in such cases made and provided, and against the peace and dignity of the State.

B. L. LLOYD, *Complainant.*

"Sworn to and subscribed before me this 28th day of July, 1940.

J. B. COLE    (Seal)
*Deputy Clerk Recorder's Court.*"

---

"NORTH CAROLINA,                          IN THE RECORDER'S COURT.
DURHAM COUNTY.

THE STATE                              WARRANT FOR
v.                          Operating a Gambling House
WILLIE F. WEBSTER,
JOE JONES AND                          WARRANT No. 2
RAYMOND WEBSTER.

"B. L. LLOYD, being duly sworn on information, says that Willie F. Webster, Joe Jones, and Raymond Webster, on or about the 28th day of July, 1939, with force and arms, at and in the County aforesaid, and within Durham County, did willfully, maliciously, and unlawfully operate a gambling house, a house where persons are accustomed to meet for the purpose of gambling, and did then and there possess devices known

as Tip Board or Base Ball Boards and did then and there operate and cause to be operated the aforesaid gambling device on their premises, in violation of Section 4434 and 4433 Consolidated Statutes, against the statute in such cases made and provided, and against the peace and dignity of the State.

B. L. LLOYD, <em>Complainant.</em>

"Sworn to and subscribed before me, this 28th day of July, 1939.

J. B. COLE   (Seal)<br>
<em>Deputy Clerk Recorder's Court.</em>"

The evidence disclosed that the defendant operated a shop known as the Durham Sport Shop, in the city of Durham, which establishment occupied the ground floor of a store building. In the front room cigars, soft drinks, and magazines were sold. There were two partitions in the back, one of which created a back room furnished so that people could sit, or lounge, and watch an electrically operated scoreboard. The room contained a stove and a short counter, with a cash drawer.

This place was raided a number of times by officers of the law. On 7 June, it was searched by J. L. Whitfield, a member of the Durham police force, under authority of a search warrant and with the assistance of other officers. When the officers entered the building, the defendant went into the back room and locked the door so that the officers were unable to enter without breaking out a panel. After forcing an entry, they found the defendant in the room. Paper and kerosene were burning in the stove, but no gambling devices were found on this occasion. When Mr. Whitfield returned to the smoke shop some days later, the entire door had been covered with heavy metal sheeting.

On 8 July, B. L. Lloyd, another member of the police force, inspected the back room. Again, the door was fastened and the officer experienced difficulty in gaining access to the room. There were a number of people there on this occasion. The stove was hot and contained paper ashes, although it was a hot day and electric fans were running. Mr. Lloyd came back on 13 July and found a number of people in the room and loose tickets from Tip Boards scattered about the floor. The defendant was there, and, as usual, he hurried to the back room and closed the door when he saw Mr. Lloyd coming.

The defendant's establishment was searched again, under warrant, by H. W. Carlton, a member of the police force, on 22 July, 1939. When Mr. Carlton started to enter the back room he saw Joe Jones, an employee, hand the defendant some Tip Boards or Baseball Boards. As Mr. Carlton reached for the boards, Jones forced him outside the room, and the defendant closed the door. When he finally succeeded in entering the room, the defendant and a number of people were there. Although

it was a hot day and the electric fans were in operation, there was a red-hot fire in the stove. On this occasion quite a number of Tip Boards or Baseball Boards were seized. Loose slips of paper which had been pulled from some of the boards were found lying about the room. Fifty cents and a quantity of small change were also found scattered about the premises.

The shop was raided finally on 28 July, 1939, this time by B. L. Lloyd, who acted pursuant to a search warrant, and was assisted by other officers. The defendant and several other people were there. There had been a fire in the stove, which had just gone out, and paper ashes, which were still warm, were found. On this occasion a quantity of Tip Boards or Baseball Boards were discovered hidden in a secret compartment in the bottom of the stove. When they were found, Mr. Lloyd testified, "Mr. Webster said I had been tipped off to his hiding place."

According to the evidence, the boards which were seized from the defendant were boards of a type commonly used in gambling. Slips of paper or tickets could be drawn from a board in much the same manner as numbers are drawn from a punchboard. A board would contain 120 tickets. If used as a baseball board, the person drawing a ticket with the names of the two major league baseball teams making the highest scores that day would win. When played as a Tip Board a seal with a number printed on it would be attached to the board. Another number would be hidden by the seal. The person drawing a ticket containing both numbers would win. According to the evidence, tickets are commonly sold at ten cents each. The winner gets $10.00 and the operator keeps $2.00.

Instructions to the jury pertinent to the decision are set out in the opinion.

The jury returned a verdict of guilty upon both warrants. Judgment followed of eighteen months on the roads in each case, the terms to run concurrently. The defendant appealed, assigning errors.

*Attorney-General McMullan and Assistant Attorneys-General Bruton and Patton for the State, appellee.*

*R. P. Reade and Jas. R. Patton, Jr., for defendant, appellant.*

SEAWELL, J. Reference to the second warrant shows that probably two offenses are charged—operating a gambling or gaming house and the unlawful possession of gambling devices. A perusal of the judge's charge shows that he elected to present to the jury, in this warrant, only the charge of keeping a gambling house, treating the references to sections 4434 and 4433 as surplusage, or as explanatory of the charge. The defendant took no exception to this treatment of the warrants.

There was plenary evidence to go to the jury as to both offenses submitted for their consideration, and the motions for judgment of nonsuit were properly overruled.

The defendant here relies mainly on exceptions to the instructions to the jury, which we now consider.

It is contended the judge trespassed on the statute—C. S., 564—in expressing an opinion on the evidence in the following bracketed clause of his charge: ". . . as to whether you find him guilty of having these gambling devices in his possession." But the context shows that the judge was referring to the warrants, or charges, and the reference was purely abstract—to the devices mentioned in the warrant, rather than those about which testimony had been taken. He had not yet referred to the evidence. The point is too narrow to support a contention of prejudicial error.

For the same reason—that it is an expression of opinion on the evidence—objection is made to the following:

"The defendant contends that he is charged under the wrong statute. (c) Now, as to that, gentlemen, I charge you as a matter of law that a punchboard under the statute and a tip board would be the same thing under that statute, and I charge you that if you find that this defendant is guilty, are satisfied beyond a reasonable doubt that he had these tip boards in his possession, and that they are gambling devices, I charge you he would be guilty under that statute as a matter of law. (d)"

Obviously the intention was to instruct the jury that under the evidence a tip board would be as much within the statute as a punchboard, as a gambling device. This is clarified by the latter part of the quotation: ". . . if you . . . are satisfied beyond a reasonable doubt that he had these tip boards in his possession, and they are gambling devices." It is the province of the jury to pass on and determine the facts, but when they are determined, whether they describe or define something within the statute, is a matter of law. Taken in its proper connection, the instruction is intended to mean no more. The probability of prejudice from this source is, we think, inconsiderable.

Finally, defendant makes a broadside exception to the charge on the ground that it fails to explain and apply the law to the evidence, as required by C. S., 564. This exception could well be rejected, since no specification of the supposed defect is made in the assignment of error. *Jackson v. Lumber Co.,* 158 N. C., 317, 74 S. E., 354. But in the brief, counsel point to the fact that nowhere in the charge is there given a definition or explanation of "gambling" or "gambling device." As to this, we think the observations of *Montgomery, J.,* speaking for the Court in *S. v. Morgan,* 133 N. C., 743, 745, apply as well here as they did to the indictment in that case: "Where the law uses the word 'gam-

ing' it not only uses a term well defined and known to the law writers, but its meaning is well understood by the citizens of the Commonwealth; and when the words 'gambling house' are used all English speaking people know the meaning of them." Perhaps it may have been the duty of the judge to have defined these terms, as a matter of "subordinate" elaboration, if a special instruction had been asked; but the terms are not technical, or even appropriated to the law, which sometimes gives a legalistic twist to common expressions. They are terms used in common parlance, and it seems to us supererogation to require the court to garb simple words in the starches and ruffles of technicality, which often tends to make them less understandable.

Other exceptions not discussed are not considered as presenting prejudicial error justifying the court in disturbing the result of the trial.