### STATE v. WILLIAM NALL.

(Filed 16 December, 1953.)

**1. Criminal Law § 52a (1)—**

Upon defendant's motion to nonsuit in a criminal prosecution, defendant's evidence in conflict with that of the State is not to be considered, but defendant's evidence may be considered when it is favorable to the State or tends to explain or make clear that which has been offered by the State. G.S. 15-173.

**2. Automobiles § 30b: Criminal Law § 8b—**

The operation of a vehicle upon a highway within this State while under the influence of intoxicating liquor is a misdemeanor, and therefore all who participate therein as aiders or abettors or otherwise are guilty as principals.

**3. Automobiles § 30d—**

The evidence offered by the State in this case and so much of defendant's evidence as is favorable to the State or tends to explain or make

clear that offered by the State, *is held* sufficient to show that defendant was operating his truck upon a highway within this State while he was under the influence of intoxicating liquor, or that another, also in an intoxicated condition, was driving the truck under defendant's direction and control, defendant being in the vehicle, and therefore was sufficient to sustain a verdict of guilty in a prosecution of defendant under G.S. 20-138.

**4. Automobiles § 31b—**

The evidence in this case taken in the light most favorable to the State *is held* sufficient to support a finding by the jury beyond a reasonable doubt that after an accident between defendant's truck and an automobile on the highway, in which the driver of the other car was injured and his car damaged, defendant did not stop and comply with the provisions of G.S. 20-166 (c).

**5. Automobiles § 30d—**

The use of the term "any beverage containing alcohol" rather than the term "intoxicating. beverage" in the court's charge defining the expression "under the influence of intoxicating liquor" in a prosecution for drunken driving, *is held* not prejudicial.

APPEAL by defendant from *Rousseau, J.,* at May Term, 1953, of MOORE.

Criminal prosecution upon a warrant issued by a justice of the peace of Carthage Township, Moore County, North Carolina, upon affidavit charging in two counts that on 8 January, 1953, defendant (1) operated a motor vehicle on the public roads of North Carolina, while under the influence of narcotic drugs or intoxicating liquor, to wit, "drunken driving," and (2) hit another motor vehicle and left the scene of the accident, returnable before recorder's court of said county. Upon trial in the recorder's court, defendant was found to be guilty, and from judgment pronounced defendant appealed to Superior Court.

From the evidence offered upon the trial in Superior Court these facts appear to be uncontroverted:

1. About 6 o'clock on a rainy, foggy night, 8 January, 1953, a car owned and operated by one Gilbert Frye, traveling on a paved State highway, No. 27, from the direction of Sanford toward Carthage, N. C., collided with a truck owned and occupied by defendant, William Nall.

2. The truck of defendant left the scene of the accident, and traveled up a dirt road six-tenths of a mile and stopped. There Frye and Police Chief Cameron found it. (Cameron is now dead.)

The evidence for the State tends to show this narrative: The truck came off a side road crossing the highway, in front of the car, and the rear of the truck hit the left rear of the car; the collision smashed the fender of the car "up against" the rear wheel, damaging the car extensively. By the impact Frye was thrown out of the car, landing on his shoulder. Defendant was in the truck going off. He did not wait to see

if Frye was hurt, and never came to Frye's car nor did he speak to Frye. Frye and Chief Cameron saw defendant at the truck where it had stopped as above stated. Defendant was in the truck. Nobody was with him at the time. And Frye testified: "He (defendant) was driving, and he got out when Chief Cameron told him to . . . He looked to me like he was under the influence pretty well. He could not talk very plain and he said there was nothing the matter with him . . . I did not get close enough to smell anything. I was there with him two or three minutes. He was then taken to jail . . ."

And State Highway Patrolman Lowrimore testified: "I went to the scene about 6:20 . . . The defendant was not there at the time . . . I saw him at the jail. He was highly intoxicated,—it was thirty or forty minutes after the collision . . . I went to the jail to see him and Mr. Nall staggered over to the bars and I got up close to him . . . and he had a strong odor of intoxicants upon his breath. I saw a wound on his head . . ."

Defendant, reserving exception to denial of his motion, aptly made when the State first rested, testified: "Gilbert Frye ran into the rear of my truck on January 8th, hit the right-hand back wheel bed . . . I was sitting on the right-hand side of the truck . . . My head hit the right-hand windshield and broke it out and knocked me addled. I had not had anything at all to drink on this day. I had worked all day . . . I left the place where I was working . . . at Vass . . . came back by Cameron . . . straight down Highway 27 toward Carthage . . . I was not driving at the time. June Lowe was driving . . . I did not drive the truck away. June Lowe drove it. When Mr. Frye came up I was not driving the truck. I did not drive it up there. Immediately after being hit I was addled and did not have any idea what I did . . . After I got bumped into I got out and went back and sat down. I had a sick headache. I was pretty sick. I went back to the car of Mr. Frye and opened the door on the left-hand side and he fell out. Mr. Frye told June to pull up and we drove off." Again, "How long was that after the collision?", defendant answered, "About five minutes" . . .

And defendant continued: "I remember the officer coming down in the jail, and he asked me for my driver's license . . . He stayed up there about five or ten minutes . . . I remember that when Mr. Frye came up there I told him I was sick and at the time I got in the truck when Mr. Frye and Mr. Cameron came up there I don't know what was taking place but I did recognize them . . . I was not drinking that night, neither of us were drinking. I did not drink any liquor that night . . . I didn't have any odor of intoxicants on my breath and I was not staggering . . . I was sitting on the bunk when Mr. Lowrimore came in and asked for my license. I didn't get up off the bunk. I knew what he said

. . . I did not see Mr. Frye thrown out of his car and get in my truck and drive off."

And June Lowe, as witness for defendant, testified that he drove the truck up to the wreck; that when it happened Mr. Nall went back to the car, and "Mr. Frye told us to pull off his car, and we pulled off up the road and stopped"; and that neither of them had had anything to drink that day; that they did not come out of any side road into Mr. Frye; that "Mr. Nall had hit . . . and busted the windshield and knocked a knot on his head."

And defendant offered testimony of others tending to show that he was not drinking the night of the wreck.

When defendant rested, the State recalled June Lowe for recross-examination. He said: ". . . Mr. Frye told me to pull off.

"I drove away from the scene of the collision. I didn't know which way I was going, it was foggy and dark . . . I pulled up this dirt road and stopped. I was driving . . ."

Then the State recalled Patrolman Lowrimore, and he stated: (without objection) "I went back to the truck and that was the first time I saw Lowe . . . I had a conversation with Lowe and he said he was drinking liquor Mr. Nall gave him. He had a strong odor on his breath . . . He said he could get home all right and we let him go. He denied driving the truck that night . . . Before the case came up he called me over to him in front of the courthouse and said that 'Mr. Will wants me to say that I was driving the truck' . . . and he denied he was driving the truck,—that was in Recorder's court . . . He told me at the truck that night that he was drinking liquor and in consequence of what he told me I had him indicted for driving under the influence . . . He pleaded guilty in that case . . . Every time the colored boy has been on the stand to testify he has sworn that he was the one operating the truck . . ."

Defendant, at the close of the evidence, renewed his motion for judgment as of nonsuit. The motion was denied and he excepted.

The court, before charging the jury, allowed this amendment to the warrant: "And the said William Nall did drive a motor vehicle while it was involved in an accident resulting in damage to the automobile of one Gilbert Frye, and he, the said William Nall, did unlawfully and willfully fail to immediately stop the motor vehicle he was then driving at the scene of the accident."

Verdict: Guilty as charged.

Judgment: (1) On the count of operating car under the influence of intoxicants: Confinement in the common jail of Moore County for a period of 90 days and assigned to work on the roads under the control and supervision of the State Highway and Public Works Commission, and that he surrender his driver's license to the Clerk and he is directed

STATE *v.* NALL.

to transmit same to the Safety Division of the Motor Vehicles Department at Raleigh to be revoked as provided by law; (2) "On the second count of doing injury to property"; a like sentence "to run concurrently with the sentence in the count of driving under the influence."

Defendant appeals therefrom to Supreme Court and assigns error.

*Attorney-General McMullan, Assistant Attorney-General Moody, and Max O. Cogburn, Member of Staff, for the State.*

*H. F. Seawell, Jr., and Robert L. McMillan, Jr., for defendant, appellant.*

WINBORNE, J. While the record on this appeal reveals that there are twenty-nine assignments of error based upon a like number of exceptions taken in the course of the trial, and to portions of the charge given by the court to the jury in the Superior Court, defendant, appellant, in his brief states only four questions as being involved.

The first question challenges the correctness of the rulings of the court in denying defendant's motions aptly made for judgment as of nonsuit, pursuant to provisions of G.S. 15-173.

It is appropriate to note that the statute, G.S. 15-173, provides, in pertinent part, that, when on the trial of any criminal action in the Superior Court, the State has introduced its evidence and rested its case, the defendant may move to dismiss the action, or for judgment as in case of nonsuit; that if the motion is refused, and if defendant introduces evidence, he thereby waives any motion for dismissal or judgment as in case of nonsuit which he may have made prior to the introduction of his evidence and cannot urge such prior motion as ground for appeal; but that the defendant may make such motion at the conclusion of all the evidence in the case, and if the motion is refused, the defendant may on appeal, after the jury has rendered its verdict, urge as ground for reversal the trial court's denial of his motion made at close of all the evidence.

Such a motion made under the provisions of G.S. 15-173 serves, and is intended to serve, the same purpose in criminal prosecutions as is accomplished by G.S. 1-183 in civil actions. Thus in considering such motion in a criminal prosecution, as in a civil action, the defendant's evidence, unless favorable to the State, is not to be taken into consideration, except, when not in conflict with the State's evidence, it may be used to explain or make clear that which has been offered by the State. See *Rice v. Lumberton,* 235 N.C. 227, 69 S.E. 2d 543, where the authorities are assembled. Also see *S. v. Bryant,* 235 N.C. 420, 70 S.E. 2d 186; *S. v. Sears,* 235 N.C. 623, 70 S.E. 2d 907.

Therefore, taking the evidence offered by the State and so much of defendant's evidence as is favorable to the State, or tends to explain and

make clear that which has been offered by the State, in the light most favorable to the State, this Court is of opinion, and is impelled to hold that there is sufficient evidence to take the case to the jury on the question of the guilt or innocence of defendant on each of the offenses with which he stands charged, and to support a verdict of guilty on each of the offenses of which defendant stands convicted.

Now as to the offenses charged against defendant:

(1) As to the first offense: The statute G.S. 20-138 declares that "it shall be unlawful and punishable, as provided in Section 20-179, for . . . any person who is under the influence of intoxicating liquor . . . to drive any vehicle upon the highways within the State." And G.S. 20-179, as rewritten by 1947 Session Laws of North Carolina, Chapter 1067, Sec. 18, declares that "every person who is convicted of violating Sec. 20-138, relating to . . . driving while under the influence of intoxicating liquor . . . shall for the first offense, be punished by a fine of not less than one hundred dollars ($100.00) or imprisonment for not less than thirty (30) days, or by both such fine and imprisonment, in the discretion of the court . . ."

And in *S. v. Carroll,* 226 N.C. 237, 37 S.E. 2d 688, in opinion by *Denny, J.,* this Court held that "before the State is entitled to a conviction under G.S. 20-138 . . . it must be shown beyond a reasonable doubt that the defendant was driving a motor vehicle on a public highway of the State, while under the influence of intoxicating liquor or narcotic drugs." And, that "a person is under the influence of intoxicating liquor or narcotic drugs, within the meaning and intent of the statute, when he has drunk a sufficient quantity of intoxicating beverage or taken a sufficient amount of narcotic drugs, to cause him to lose the normal control of his bodily or mental faculties, or both, to such an extent that there is appreciable impairment of either or both of these faculties." See also *S. v. Bowen,* 226 N.C. 601, 39 S.E. 2d 740; *S. v. Blankenship,* 229 N.C. 589, 50 S.E. 2d 724; *S. v. Lee,* 237 N.C. 263, 74 S.E. 2d 654.

Moreover, the unlawful operation of a vehicle upon a highway within this State while under the influence of intoxicating liquor within the meaning of G.S. 20-138 is a misdemeanor and all who participate in the commission of a misdemeanor, as aiders and abettors or otherwise, are guilty as principals. See *S. v. Gibbs,* 227 N.C. 677, 44 S.E. 2d 201, and cases there cited.

In the light of these statutes, as interpreted and applied by the Court, the facts and circumstances in evidence in the case in hand, taken in the light most favorable to the State, are sufficient to support a finding by the jury, beyond a reasonable doubt, that on the occasion of the collision between the truck of defendant and the car of Gilbert Frye, on the night of 8 January, 1953, either (1) defendant was operating his truck upon

a highway within this State while he was under the influence of intoxicating liquor; or, (2) if June Lowe was operating the truck, he, Lowe, was under the influence of intoxicating liquor, and that defendant was riding in his truck, aiding and abetting in the operation of it. The case was submitted to the jury on this theory.

As to the second count: The statute, G.S. 20-166, as it existed on 8 January, 1953, in pertinent part, declares that the driver of any vehicle involved in an accident: (a) resulting in injury to any person, shall immediately stop such vehicle at the scene of such accident, and any person violating this provision shall upon conviction be punished as provided in G.S. 20-182; or (b) resulting in damage to property and in which there is not involved injury of any person, shall immediately stop such vehicle at the scene of the accident, and any person violating this provision shall be guilty of a misdemeanor and fined or imprisoned, or both, in the discretion of the court; or (c) resulting in injury to any person or damage to property shall also give his name, address, operator's or chauffeur's license number and registration number of his vehicle to the person struck or the driver or occupants of any vehicle collided with, and shall render to any person injured in such accident reasonable assistance, including the carrying of such person to a physician or surgeon for medical or surgical treatment if it is apparent that such treatment is necessary or requested by the injured person, and it shall be unlawful for any person to violate this provision, and such violator shall be punishable as provided in G.S. 20-182.

In the light of this statute, the evidence in the case in hand, taken in the light most favorable to the State, is sufficient to support a finding by the jury beyond a reasonable doubt that (1) there was an accident on night of 8 January, 1953, between the truck of defendant and the car of Gilbert Frye; (2) that Gilbert Frye was injured, and his car damaged; (3) that defendant did not stop, and comply with the provisions of subsection (c) above set forth.

The fourth question involves portions of the charge, particularly as to what is meant by the expression "under the influence of intoxicating liquor." The court charged that if the jury find beyond a reasonable doubt, the burden being upon the State, that on 8 January last, defendant "on the highway in this county, operated a motor vehicle after drinking any beverage containing alcohol to the extent . . . that he did not have the normal control of his mind and of his body, to the extent . . . to where his mental and physical faculties, or either one of them, has become appreciably impaired . . . it would be your duty to return a verdict of guilty on that count." Complaint is made of the use of the words "any beverage containing alcohol," rather than "a sufficient quantity of intoxicating beverage,"—it being contended that the use of such words was

calculated to mislead the jury to defendant's prejudice. While this Court has commended and commends the definition enunciated by *Denny, J.,* in *S. v. Carroll, supra,* quoted first hereinabove, it is not deemed that the phraseology to which exception is here taken is beyond the pale of the term. See *S. v. Bowen, supra; S. v. Lee, supra.*

Other exceptions to the charge are not of sufficient merit to require express consideration.

The second question relates to numerous exceptions to rulings in respect to admission and exclusion of evidence. However, consideration of each of them fails to show error.

And the third question is based upon exceptions which defendant contends indicate that the court erred in the manner in which trial below was conducted. Yet a most careful consideration and examination of the record and case on appeal fails to disclose any matters on which to found the question. Rather, it appears that the trial was orderly conducted, and the case fairly and squarely presented to the jury in accordance with established principles of law, and rules of practice. And the jury has not accepted defendant's version of the facts.

Hence in the judgment below, this Court finds

No error.