## STATE v. JOHNNIE E. NEWTON.

### (Filed 4 November, 1959.)

**1. Criminal Law § 159—**

Assignments of error in support of which no reason or argument is given or authority cited in the brief are deemed abandoned.

**2. Criminal Law § 156—**

An assignment of error to the charge for failure of the Court "to declare and explain the law arising on the evidence in the case" and the failure of the Court "to apply the law to the evidence" is a broadside assignment and is ineffectual.

**3. Assault and Battery § 13—**

Where the evidence shows an assault on prosecuting witnesses as they drove by defendant's house and another assault shortly thereafter when they turned around and came back to defendant's house, *held* the circumstances as to defendant's conduct at the time of the second assault are relevant as to the defendant's attitude and intent with reference to the prior incident.

**4. Assault and Battery § 15— Instruction on question of assault by pointing and firing rifle held favorable to defendant.**

The State's evidence tended to show that when the prosecuting witnesses had gotten some 50 feet beyond defendant's house in their jeep defendant pointed and fired his rifle in such manner that they were placed in apprehension of their safety, left the scene, and did not return until they had alerted all patrol cars in the area to come to their aid and had loaded their own weapons, and that after the prosecuting witnesses had turned around and again passed defendant's house he pointed the weapon directly at them. *Held:* The evidence is sufficient to support a finding that the defendant pointed and fired his rifle toward the jeep and its occupants or toward the area in which the vehicle was proceeding, notwithstanding that one of the witnesses testified that he pointed the rifle "in the general direction of" as well as "in the direction of" the witnesses, and an instruction that the jury should find defendant guilty if he shot "in the direction of" the prosecuting witnesses is not prejudicial to defendant.

**5. Assault and Battery § 5—**

A person who offers or attempts by violence to injure the person of another, or who by a show of violence puts another in fear and thereby forces him to leave a place where he has a right to be, is guilty of an assault.

HIGGINS, J., not sitting.

APPEAL by defendant from *Mallard, J.,* May 25, 1959 Special Term, of VANCE.

Criminal posecution upon two indictments, consolidated for trial, each charging that defendant, on the 22nd day of May, 1959, un-

lawfully and wilfully assaulted the person therein named with a deadly weapon, to wit, a rifle. One indictment (#3490) relates to an alleged assault on Lt. Clyde E. DeBow. The other (#3491) relates to an alleged assault on Ralph E. Deatherage.

There was evidence tending to show these facts:

On the afternoon of Friday, May 22, 1959, DeBow and Deatherage, members of the National Guard, were on active State duty in Henderson. Deatherage, operating a jeep, was on patrol duty in the area of the North Henderson Mill. Roberson Street, where defendant lived, was in this area. About 5:30 p.m. Deatherage observed defendant on his front porch cleaning a rifle. Thereafter, Deatherage "kept the house under surveillance." About seven o'clock, Deatherage met Lt. DeBow at the North Mill Gate. DeBow got into the jeep with him. They rode south on Roberson Street. When they passed defendant's house, "he was still on the front porch with his rifle." Shortly thereafter, Deatherage turned around and came back by defendant's house.

According to DeBow's testimony: As they passed defendant's house, traveling north, "the weapon was raised to his shoulder and aim was taken in this manner *(indicating)*." (Our italics) "When he raised the weapon, I kept my eyes on him." After passing, DeBow watched defendant through the back window of the jeep. "We proceeded by the house about fifty feet and as I watched him through the window, the weapon was discharged in our direction. We were going north and the weapon was pointed north." In referring to how the rifle was pointed when fired, DeBow used two expressions, namely,"in our direction" and "in our general direction."

Deatherage, who was driving the jeep, testified that he "heard the report of the first shot . . ."

DeBow testified: ". . . I did not observe the striking bullet. There was (sic) no cartridges striking the jeep."

Deatherage and DeBow, "placed in apprehension of (their) own safety," continued north on Roberson Street. After giving "the necessary alert to call in the rest of the M.P. vehicles in the area to that location," they "circled back around," proceeded back (south) along Roberson Street toward defendant's house. Meanwhile, the Guardsmen "put the ammunition in the chambers of (their) weapons as a protective measure." DeBow testified: "We proceeded toward his house and observed him with a rifle still at his shoulder and pointed at us." Again: "As we were going away, the weapon was fired in our direction and as we came back the weapon was pointed right at us." Deatherage testified: ". . . as we were coming down he had the rifle

to his shoulder pointed at us or in our direction. He had it very similar to this (indicating with rifle) pointing it at us."

Upon returning, the Guardsmen parked their jeep "on the opposite side of the dirt street across from Newton's store and house combination." They "sat in the vehicle waiting for the other jeeps to come into the area, keeping him under observation at all times." As they watched him, defendant fired his rifle into the ground, then lowered it and put it down on the bench beside him. On cross-examination by defendant, Deatherage, referring to this firing, stated: "When you fired that time you moved it in the direction of the ground."

When the other jeeps arrived, men were deployed along the street and behind Newton's house. Defendant told these men: "Stay off this damn property, you have no business on this property." ". . . the word was given to the men to step back across the ditch and stay off his property until we had the Officer of the Day who had a warrant for Newton to give us the right to be on his property." "After a few minutes, Lieutenant Priddy came up with the warrant and the warrant was read to Newton."

After defendant's arrest, a search of his premises was made. Several articles, including a box of .22 cartridges, were found. When the Guardsmen got defendant's .22 rifle, "eleven live rounds" were "in the weapon."

Defendant did not testify. Evidence offered by defendant tended to show that he was cleaning his rifle; and that, solely for the purpose of testing whether it funtioned properly, he fired *three* shots directly into the ground.

The jury, as to each indictment, returned a verdict of guilty; and judgments, imposing active sentences, were pronounced.

Defendant excepted and appealed, assigning errors.

*Attorney General Seawell and Assistant Attorney General Bruton for the State.*

*W. N. Nicholson, James B. Ledford, James J. Randleman and L. Glen Ledford for defendant, appellant.*

BOBBITT, J.   While the record shows four assignments of error, only two are discussed in defendant's brief. Assignments of error, under our Rules and decisions, are deemed abandoned when defendant's brief states no reason or argument and cites no authority in support thereof. *S. v. Perry,* 250 N.C. 119, 132, 108 S.E. 2d 447.

Defendant assigns as error: "That the trial Court erred in that in his Charge to the Jury, he failed to declare and explain the law aris-

ing on the evidence in the case and failed to apply the law to the evidence." This assignment, and the exception on which it is based, is broadside and ineffectual. *S. v. Corl,* 250 N.C. 262, 265, 108 S.E. 2d 613. It contains no suggestion as to what instruction is deemed objectionable or as to what instruction or instructions defendant contends should have been (but were not) given.

Defendant's remaining assignment of error is directed to the italicized portion of the following excerpt from the court's instructions to the jury, *viz.*: "So, Members of the Jury, as to Case Number 3490, I instruct you that if you find from the evidence and beyond a reasonable doubt, the burden being on the State to so satisfy you, *that the defendant Johnnie E. Newton, did on the 22nd day of May, 1959, point a rifle in the direction of the prosecuting witness, Clyde E. DeBow and shoot the rifle in the direction of the prosecuting witness,* Clyde E. DeBow, and that he then and there shot said rifle at said prosecuting witness with the intent to do him bodily harm, then the defendant Johnnie E. Newton would be guilty of an assault with a deadly weapon as charged in the Bill of Indictment and if you so find and beyond a reasonable doubt, it will be your duty to return a verdict of guilty as charged in case Number 3490 in the bill of indictment."

The evidence is positive and precise that, when the Guardsmen returned, defendant pointed his loaded rifle directly at them. G.S. 14-34 provides: "If any person shall point any gun or pistol at any person, either in fun or otherwise, whether such gun or pistol be loaded or not loaded, he shall be guilty of an assault, and upon conviction of the same shall be fined, imprisoned, or both, at the discretion of the court." True, the quoted instruction shows the case was submitted in relation to the shot fired when the jeep was proceeding north on Roberson Street. Even so, the circumstances as to defendant's conduct when the Guardsmen returned are relevant as to defendant's attitude and intent with references to the prior incident.

The ground upon which defendant challenges the italicized portion of the quoted instruction is that the court used the expression, "in the direction of," sometimes used by DeBow, when DeBow also used the expression, "in the general direction of," asserted to be a broader expression. As to this point, it would seem that the court, by requiring as a prerequisite to conviction that the jury find that defendant shot "in the direction of" the prosecuting witness, adopted the view more favorable to defendant.

When considered in the light most favorable to the State, we think the testimony that defendant pointed and fired his rifle "in the di-

rection of" and "in the general direction of" the prosecuting witness is sufficient, taking all circumstances into consideration, to support the finding that defendant pointed and fired his rifle toward the jeep and its occupants or toward the area in which the jeep was proceeding.

It is noted that the jeep was approximately 50 feet from defendant when defendant pointed and fired his rifle. It is further noted that defendant pointed and fired his rifle in such manner that DeBow, who observed defendant's conduct, was placed in apprehension of the safety of himself and of Deatherage; and that, by reason of defendant's conduct, these Guardsmen left the scene and did not return until (1) they had alerted all patrol cars in the area to come to their aid, and (2) they had loaded their pistols for possible use in their own protection. It is further noted that when they did return they found defendant with his loaded rifle raised and pointed directly at them.

Defendant's guilt does not depend upon whether, before firing his rifle, he took precise aim at the jeep or any occupant thereof. "It is an assault, without regard to the aggressor's intention, to fire a gun at another or in the direction in which he is standing." Wharton's Criminal Law and Procedure, Vol. 1, § 332. "The law will not tolerate such a reckless disregard for human life." 4 Am. Jur., Assault and Battery § 6. In *S. v. Baker*, 20 R.I. 275, 38 A. 653, 78 Am. St. Rep. 863, this instruction was approved: "Firing a pistol in the direction of another with the intention of frightening him, or with the intention of wounding him, are equally assaults." In *Edwards v. State*, 62 S.E. 565, the Court of Appeals of Georgia approved this instruction: ". . . If you find the defendant, without justification, shot a pistol in the direction of the witness, within carrying distance of the pistol, not intending to hit him, but intending to scare him, he would be guilty of an assault." If any portion of the quoted instruction is incorrect, it would seem to be the portion, to which defendant did not except, which imposed upon the State the burden of establishing defendant's intent to do bodily harm to the prosecuting witness.

"The principle is well established that not only is a person who offers or attempts by violence to injure the person of another guilty of an assault, but no one by the show of violence has the right to put another in fear and thereby force him to leave a place where he has the right to be. *S. v. Hampton*, 63 N.C. 13; *S. v. Church*, 63 N.C. 15; *S. v. Rawles*, 65 N.C. 334; *S. v. Shipman*, 81 N.C. 513; *S. v. Martin*, 85 N.C. 508, 39 Am. Rep. 711; *S. v. Jeffreys*, 117 N.C. 743." *S. v. Daniel*, 136 N.C. 571, 575, 48 S.E. 544. As succinctly stated by *Ruffin, J.*, in *S. v. Marsteller*, 84 N.C. 726; "No man has a right by a show

of force to put another and an unoffending person in an immediate fear of bodily harm."

Defendant has failed to show prejudicial error.

No error.

HIGGINS, J., not sitting.