STATE OF NORTH CAROLINA v. LEROY BENTON, JR.

No. 87

(Filed 8 January 1980)

1. **Homicide §§ 14.1, 21— death by shooting—defendant as aggressor—sufficiency of evidence—presumption from use of deadly weapon**

    Evidence that defendant walked over to a table in a bar where deceased was sitting and exchanged words with him concerning a woman, and both deceased and defendant then pulled out guns and started firing was sufficient evidence to permit, but not to require, the jury to infer that defendant aggressively and willingly, without legal provocation or excuse, entered into the fight; furthermore, the State was entitled to rely upon the inference of an unlawful killing when the evidence showed deceased's death was proximately caused by defendant's intentional use of a deadly weapon.

2. **Homicide § 28; Criminal Law § 163— self-defense—jury instructions on burden of proof—necessity for exception**

    Where defendant failed to take exception to the specific portion of the jury instructions complained of, his assignment of error relating to the charge was not properly before the court on appeal; even had exception been properly taken, defendant was not prejudiced by the instruction on self-defense, since the court made it abundantly clear that the State must prove the absence of self-defense beyond a reasonable doubt, and the burden of proving self-defense was therefore not improperly shifted from the State to defendant.

3. **Criminal Law § 113; Homicide § 28— self-defense—jury instructions—application of law to evidence**

    The trial court in a homicide prosecution did not violate G.S. 15A-1232 by failing to relate the evidence to the law of self-defense where the judge properly summarized the evidence presented by the State and defendant and subsequently explained the law of self-defense arising on the evidence and related the law to the facts of the case.

    Justice EXUM dissenting.

    Justices BROCK and CARLTON join in the dissenting opinion.

APPEAL by defendant from the decision of the North Carolina Court of Appeals pursuant to G.S. 7A-30(2), reported in 42 N.C. App. 228, 256 S.E. 2d 279 (1979), which found no error in the trial before *Bruce, J.,* at the 3 January 1979 Session of DAVIDSON Superior Court.

Defendant was charged in a bill of indictment proper in form with the first-degree murder of Robert Henry "Buck" Eller. Defendant enter a plea of not guilty.

The State's evidence tended to show that in the late evening on 27 October 1974, the deceased went to Dan's Place, a small private club in Davidson County, with Annabelle Ruff, Melvin Page, Paul DeLapp and Mildred Littlejohn. When this group entered the room, defendant was sitting at the bar talking with the proprietor, Dan Hulin. Mrs. Littlejohn stopped at the bar to talk with defendant for a few moments and then joined the rest of the group at a table. Defendant then walked over to the table and, standing behind Mrs. Littlejohn's chair, asked to speak with her privately. She refused, saying that "if you got anything to say to me, say it now." The deceased "Buck" Eller, who was sitting across the table from Mrs. Littlejohn, then asked defendant to leave the table. Defendant responded by asking Eller what he had to do with it and by inquiring of Mrs. Littlejohn "who she was with." Paul DeLapp answered that she was with him.

After an exchange of words, defendant and Eller each pulled out a gun and started shooting at each other. None of the State's witnesses could say who fired first, although Melvin Page did testify that he first saw defendant's gun in his hand and only noticed Eller's gun in his hand after the latter had fallen to the floor. A patron, Bobby Hayes, was killed by the gunfire, and Annabelle Ruff was wounded. Eller walked out of the bar and fell on the shoulder of the road. He was gasping for breath, bleeding in the center of his chest and the fingers on his right hand had been shot off. Eller died the next morning.

According to defendant's witnesses, defendant had done nothing to provoke Eller when the latter first pulled out his gun and started shooting. Defendant then fell to the floor behind the upturned table, pulled a gun out of his coat pocket and fired back. The proprietor testified that defendant was helping him run the club that night, and that defendant, while still at the bar, had told him that he was going over to ask Mrs. Littlejohn to dance. Defendant testified that Eller shot at him first, singeing his hair, and that defendant saw Eller pointing the gun at him. Defendant believed that he had to shoot to prevent Eller from killing him.

At the close of the State's evidence, defendant moved for nonsuit (now properly denominated a motion for dismissal; G.S. 15A-1227, effective 1 July 1978). The trial court allowed the motion as to first-degree murder but denied it as to the lesser in-

cluded offenses of second-degree murder and voluntary manslaughter. Defendant renewed his motion for nonsuit at the close of all the evidence, and it was denied.

The jury returned a verdict finding defendant guilty of voluntary manslaughter. Defendant appealed from judgment imposing a sentence of imprisonment for a term of not less than five years nor more than twenty years. The Court of Appeals, in an opinion by Judge Webb, Judge Mitchell concurring, found no error. Judge Robert M. Martin dissented.

*Rufus L. Edmisten, Attorney General, by Richard L. Kucharski, Associate Attorney, for the State.*

*Hutchins, Tyndall, Bell, Davis & Pitt, by Fred S. Hutchins, Jr., and Richard D. Ramsey, for defendant appellant.*

BRANCH, Chief Justice.

Defendant first contends that the trial court erred in denying defendant's motion for judgment as of nonsuit made at the close of the State's evidence and at the close of all the evidence. Defendant contends that all of the evidence tended only to exculpate him and, therefore, establish self-defense as a matter of law.

"One may kill in self-defense if he is without fault in bringing on the affray, and it is necessary or appears to him to be necessary to kill his adversary to save himself from death or great bodily harm, the reasonableness of his apprehension being for the jury to determine from the circumstances as they appeared to him." 6 Strong's N.C. Index 3d, *Homicide*, sec. 9 (1977). "One who is an aggressor, or one who enters a fight voluntarily without lawful excuse, may not plead self-defense when he slays his adversary. [Citations omitted.] 'The right of self-defense is available only to a person who is without fault, and if a person voluntarily, that is, aggressively and willingly, without legal provocation or excuse, enters into a fight, he cannot invoke the doctrine of self-defense unless he first abandons the fight and withdraws from it and gives notice to his adversary that he has done so.' [Citations omitted.]" *State v. Watkins*, 283 N.C. 504, 196 S.E. 2d 750 (1973). *See also State v. Randolph*, 228 N.C. 228, 45 S.E. 2d 132 (1947).

A motion for judgment as of nonsuit requires the trial judge to consider all of the evidence actually admitted in the light most favorable to the State and to give the State the benefit of every reasonable inference to be drawn therefrom. *State v. Strickland*, 290 N.C. 169, 225 S.E. 2d 531 (1976); *State v. Scott*, 289 N.C. 712, 224 S.E. 2d 185 (1976). "Contradictions and discrepancies, even in the state's evidence, are for the jury to resolve, and do not warrant nonsuit. Only the evidence favorable to the state will be considered, and defendant's evidence relating to matters of defense, or defendant's evidence in conflict with that of the state, will not be considered." *State v. Henderson*, 276 N.C. 430, 173 S.E. 2d 291 (1970); *State v. Vincent*, 278 N.C. 63, 178 S.E. 2d 608 (1971).

A motion for nonsuit should be overruled if, when the evidence is viewed in the light most favorable to the State, there is evidence from which a jury could find that the offense charged has been committed and that defendant committed it. *State v. McKenna*, 289 N.C. 668, 224 S.E. 2d 537, *death sentence vacated*, 429 U.S. 912, 97 S.Ct. 301, 50 L.Ed. 2d 278 (1976). On the other hand, "when all the evidence, that of the State and that of the defendant, is to the same effect and tends only to exculpate the defendant, his motion for judgment as of nonsuit should be allowed." *State v. McWilliams*, 277 N.C. 680, 178 S.E. 2d 476 (1971); *State v. Atwood*, 290 N.C. 266, 225 S.E. 2d 543 (1976).

[1]   Upon applying these well-established principles of law to the evidence in the case *sub judice*, we conclude that there was sufficient evidence to permit, but not require, the jury to infer that defendant "aggressively and willingly, without legal provocation or excuse, entered into the fight." Thus, it was for the jury to determine whether defendant was the aggressor.

Under this assignment of error, defendant also contends that the Court of Appeals erred in stating that the State's evidence that defendant shot deceased was evidence "from which the jury could conclude it was an unlawful killing." In support of this conclusion, the court cited *State v. Hammonds*, 290 N.C. 1, 224 S.E. 2d 595 (1976). In our opinion, *Hammonds* was cited by the Court of Appeals for the proposition that when the State proves or it is admitted that defendant intentionally inflicted a wound with a deadly weapon proximately causing death, nothing else appearing, the presumptions of malice and an unlawful killing arise. Defend-

ant claims that since *Hammonds* involved a defense of insanity for which a defendant has the burden of proof, the application of the presumption of unlawfulness to the instant case involving self-defense violates the State's burden of proof under *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed. 2d 508 (1975). However, this Court has held that due process under *Mullaney* is not "violated by a rule which allows rational and natural presumptions or inferences to arise when certain facts are proved beyond a reasonable doubt by the State." *State v. Williams*, 288 N.C. 680, 220 S.E. 2d 558 (1975). More specifically, the presumptions of malice and unlawfulness in homicide cases have also been held to be constitutional:

> The [*Mullaney*] decision permits the state to rely on mandatory presumptions of malice and unlawfulness upon proof beyond a reasonable doubt that the defendant intentionally inflicted a wound upon the deceased with a deadly weapon which proximately resulted in death . . . . If there is evidence in the case of all the elements of self-defense, the mandatory presumption of unlawfulness disappears but the logical inferences from the facts proved may be weighed against this evidence. If upon considering all the evidence, including the inferences and evidence of self-defense, the jury is left with a reasonable doubt as to the existence of unlawfulness it must find the defendant not guilty.

*State v. Hankerson*, 288 N.C. 632, 651-52, 220 S.E. 2d 575, 589 (1975), *rev'd on other grounds*, 432 U.S. 233, 97 S.Ct. 2339, 53 L.Ed. 2d 306 (1977).

For the reasons stated, the State was entitled to rely upon the inference of an unlawful killing when the evidence showed deceased's death was proximately caused by defendant's intentional use of a deadly weapon. We hold that the trial judge correctly denied defendant's motion for judgment as of nonsuit.

[2] By his second assignment of error, defendant contends that the trial court's charge on self-defense was confusing to the jury and impermissibly shifted the burden of proving self-defense from the State to defendant.

In this regard, defendant argues that the trial court, in defining the elements of self-defense, improperly shifted the burden of

proof by stating that "[t]he third element of self-defense that must be proved" and "[t]he fourth element of self-defense that must be proved." Judge Robert M. Martin's dissent in the Court of Appeals, in part, stated that a new trial should be granted on this basis. However, defendant failed to take exception in the record to this portion of the court's instructions. Exceptions to the trial court's charge need not be entered at the trial and may be taken within the time allowed for the preparation of the case on appeal. *State v. Lambe*, 232 N.C. 570, 61 S.E. 2d 608 (1950). Nevertheless, assignments of error relating to the charge and not predicated upon exceptions in the record set out as required by Rule 10(a) of the Rules of Appellate Procedure must be disregarded on appeal. *State v. Gordon*, 241 N.C. 356, 85 S.E. 2d 322 (1955). Here, defendant failed to take exception to the specific portion of the charge complained of, and thus this portion of his second assignment of error is not properly before us. *State v. Fowler*, 285 N.C. 90, 203 S.E. 2d 803 (1974), *death sentence vacated*, 428 U.S. 904, 96 S.Ct. 3212, 49 L.Ed. 2d 1212 (1976). Even if exception had been properly taken, however, it is our opinion that reading the charge as a whole and considering it contextually, the court made it abundantly clear that the State must prove the absence of self-defense beyond a reasonable doubt.

On the other hand, defendant properly excepted to the court's final mandate concerning the State's burden of proving lack of self-defense. He argues that this instruction was unintelligible and confusing to the jury, thus constituting prejudicial error. After discussing the elements of self-defense, second-degree murder and voluntary manslaughter, the trial court gave the following charge to the jury:

Finally, if the State has failed to satisfy you beyond a reasonable doubt, first, that Leroy Benton, Jr. did not reasonably believe under the circumstances as they existed at the time of the killing that he was about to suffer death or serious bodily injury at the hands of Robert Henry Eller; and second, that Leroy Benton, Jr. used more force than reasonably appeared to him to be necessary; and third, that Leroy Benton, Jr. was the aggressor, then the killing of Robert Henry Eller by Leroy Benton, Jr. would be justified on the grounds of self-defense, and it would be your duty to return a verdict of not guilty.

This charge properly placed the burden on the State and correctly declared the law of self-defense. *See State v. Herbin*, 298 N.C. 441, 259 S.E. 2d 263 (1979); *State v. Potter*, 295 N.C. 126, 244 S.E. 2d 397 (1978). We are of the opinion and so hold that, when read in context with the entire charge, the challenged portion of the charge was not so confusing as to mislead the jury or affect the verdict reached by them. We note parenthetically that the challenged portion of the charge was taken verbatim from the Pattern Jury Instructions and might be reviewed by the Committee on Pattern Jury Instructions for possible clarification. *See State v. Potter, supra.*

[3] In his final assignment of error, defendant contends that the trial court violated G.S. 15A-1232 by failing to relate the evidence to the law of self-defense and thus failing to explain the law arising on the evidence.

Before the jury began its deliberations and after the trial judge completed his instructions, defendant requested that the judge relate the facts and contentions of both the State and defendant as they applied to the law. An assignment of error to the charge on the ground that the court failed to explain and apply the law to the evidence is a broadside exception and ineffectual. *State v. Newton*, 251 N.C. 151, 110 S.E. 2d 810 (1959); *State v. Britt*, 225 N.C. 364, 34 S.E. 2d 408 (1945). The assignment must, to conform with the rules of practice in this Court, point out specifically the part of the charge challenged. *State v. Haddock*, 254 N.C. 162, 118 S.E. 2d 411 (1961); N.C. Rules of Appellate Procedure, Rule 10(b)(2).

Although defendant in the case *sub judice* failed to specify by brackets or otherwise the portion of the charge complained of, this Court may still consider the supposed defect as argued in defendant's brief. *State v. Webster*, 218 N.C. 692, 12 S.E. 2d 272 (1940); N. C. Rules of Appellate Procedure, Rule 2. Here, at the beginning of his instructions to the jury, the trial judge recapitulated the contentions and evidence of the State and then gave the following summary of defendant's evidence:

> The defendant on the other hand has introduced evidence, or contends that the State has failed to prove his guilt by the evidence and beyond a reasonable doubt; and in support of the defendant's contentions the defendant has in-

troduced evidence which in substance tends to show that he was working at Dan's Place; and that when the deceased, Mr. Eller, came in with his party he engaged a lady in conversation, and during the course of this conversation that suddenly and with no provocation on the part of the defendant the deceased Robert Henry Eller drew a pistol and fired past his head; that the defendant fell on the floor; and subsequently Robert Henry Eller fired his pistol again, and the defendant thereupon drew his pistol and fired four times at or toward some person he presumed to be Robert Henry Eller. That is what some of the defendant's evidence tends to show. What any of the evidence shows or tends to show is for you the Jury to determine.

I'm not attempting to recall or summarize all of the evidence in this case. . . . It is your duty to consider all the evidence, whether I have called it to your attention or not.

"The trial judge must, without special request, charge the law applicable to the substantive features of the case arising on the evidence and apply the law to the essential facts of the case." *State v. Banks,* 295 N.C. 399, 245 S.E. 2d 743 (1978); *State v. Ardrey,* 232 N.C. 721, 62 S.E. 2d 53 (1950). Specifically, G.S. 15A-1232 requires that "[i]n instructing the jury, the judge must declare and explain the law arising on the evidence. He is not required to state the evidence except to the extent necessary to explain the application of the law to the evidence." The requirements of G.S. 1-180, the antecedent of the present statute, were viewed broadly in *State v. Friddle,* 223 N.C. 258, 25 S.E. 2d 751 (1943), in which Justice Barnhill (later Chief Justice) wrote that "[t]he judge should segregate the material facts of the case, array the facts on both sides, and apply the pertinent principles of law to each, so that the jury may decide the case according to the credibility of the witnesses and the weight of the evidence."

Nevertheless, this Court has since held that the statute requires nothing more "than a clear instruction which applies the law to the evidence and gives the position taken by the parties as to the essential features of the case." *State v. Thompson,* 226 N.C. 651, 39 S.E. 2d 823 (1946). More recently, the applicable law has been further clarified in *State v. Williams,* 290 N.C. 770, 228 S.E. 2d 241 (1976), in which this Court held:

> Ordinarily, a statement of the applicable law and the contentions of the parties, without applying the law to the substantive features of the case arising on the evidence, is insufficient under the rule of G.S. 1-180. [Citations omitted.] However, where the evidence is simple, direct, and without equivocation and complication, an explanation of the law and a statement of the evidence in the form of contentions is a sufficient compliance with the statute. [Citations omitted.]

*Id.* at 773, 228 S.E. 2d at 243. *See also State v. Best,* 265 N.C 477, 144 S.E. 2d 416 (1965); *State v. Thompson, supra.* In that case, this Court overruled defendant's contention that the trial judge had failed to properly state the evidence and apply the law thereto.

In the instant case, as in *Williams,* there was direct eyewitness testimony that defendant shot and killed the deceased. Yet here the testimony permitted conflicting inferences as to who was the aggressor in the affray and thus bearing directly on defendant's claim of self-defense. Nonetheless, the case before us need not fall within the rule in *Williams* because here the trial judge did more than merely state the contentions of the parties and enunciate the pertinent law. Instead, the judge properly summarized the evidence presented by both the State and by defendant. He subsequently explained the law of self-defense arising on the evidence and related the law to the facts of the instant case. Although not a model charge, we hold that under the present set of facts it complies adequately with the requirements of G.S. 15A-1232.

We have carefully considered the entire record and find no error warranting a new trial.

No error.

Justice EXUM dissenting.

I respectfully disagree with with the majority's conclusion that defendant's motion to dismiss all charges at the close of all the evidence should have been denied. In my view all the evidence in the case offered by the state and the defendant demonstrates that defendant killed Robert "Buck" Eller in the exercise of a perfect right of self-defense.

To avoid this conclusion the majority appears to rely on the propositions: (1) there is some evidence that defendant was the aggressor in bringing on the affray with the deceased; and (2) the state, upon proof of an intentional shooting with a deadly weapon resulting in death, is entitled to rely on an inference of unlawfulness which itself suffices to survive defendant's motion.

As to the first proposition, the majority does not specify what act defendant committed that would characterize him an aggressor in the affray. My study of the record fails to reveal such an act. Defendant's conversation at the table where deceased was sitting could not have labeled him an aggressor. In order for language alone to make one who uses it an aggressor in the law of self-defense it must be "such abusive language . . . as is calculated and intended to bring on a fight" considering all the circumstances surrounding the event. *State v. Robinson,* 213 N.C. 273, 280, 195 S.E. 824, 829 (1938); *see also State v. Jennings,* 276 N.C. 157, 171 S.E. 2d 447 (1970), later app., 279 N.C. 604, 184 S.E. 2d 254 (1971); and *State v. Crisp,* 170 N.C. 785, 87 S.E. 511 (1916). There is no evidence that any such language was used by defendant.

The majority seems to rely on the testimony of state's witness Melvin Page as presenting some evidence that defendant drew his weapon first and was therefore the aggressor — a fact which, if established, would, I agree, deprive defendant of a perfect right of self-defense. Page's testimony falls far short of being evidence that defendant drew his weapon first. He said:

"It wasn't but a minute until Leroy Benton came to the table. He asked Mildred to speak to her and Mildred said he didn't have nothing to tell her. He said I want to speak to you privately and Mildred said no. She said if you got anything to say to me, say it now. Robert Eller spoke up, said, this is a private table. Leroy Benton asked Robert what he had to do with it, and then asked Mildred who she was with. Paul DeLapp said that she was with him.

Then the shooting started, so when I looked up, when I saw Benton's gun, I jumped up and Paul knocked me down. I heard a gun go off, Buck fell right beside me. Buck Eller raised back up and I crawled across over to the next table. When the shooting got over this girl came where I was and

asked was I hurt. I said no and got up. When I started out, I saw Hayes laying on the floor. I didn't see Benton at all.

. . . .

On this occasion, I saw two guns. I saw Benton's gun first and it was in his hand. I saw Mr. Eller's gun in his hand when he was on the floor. I do not know how many shots were fired. I do not know who fired first. I do not know how many shots had been fired when I saw Mr. Eller fall to the floor. This is because the way everything was and everybody was running and hollering and going on, couldn't nobody tell about the shots. I did not see Mr. Benton after the shooting, but I did see Mr. Eller after the shooting. He was laying out on the shoulder of the road."

Thus Page saw neither weapon until the shooting had already begun. The clear import of his testimony is that after the shooting had begun he saw a gun in defendant's hand and then a gun in the deceased's hand. Thereafter he did not see the defendant but he did see the deceased lying on the shoulder of the road. He never testified, nor does his testimony permit a reasonable inference that defendant drew his gun first.

Thus I find no evidence of any act by defendant that would make him the aggressor in bringing on the affray with the deceased. The majority fails to point to any such act.

The state, of course, has offered evidence that defendant intentionally shot deceased with a deadly weapon. The majority concludes, therefore, that the state is entitled to rely on an inference of unlawfulness, i.e., the absence of self-defense, which is sufficient to take the case to the jury. Such an inference does not arise, or, if it arises, it is deemed rebutted as a matter of law "[w]hen the State's evidence and that of the defendant are to the same effect and tend only to exculpate the defendant" on the ground of self-defense. *State v. Johnson*, 261 N.C. 727, 730, 136 S.E. 2d 84, 86 (1964); *accord, State v. Carter*, 254 N.C. 475, 119 S.E. 2d 461 (1961). Furthermore on a motion to dismiss at the close of all the evidence defendant's evidence, to the extent that it does not conflict with or contradict but merely explains or clarifies that offered by the state, may be considered. These principles were stated in *State v. Bruton*, 264 N.C. 488, 499, 142 S.E. 2d 169, 176 (1965), as follows:

"On a motion to nonsuit, the defendant's evidence which explains or makes clear the evidence of the State may be considered. Strong's North Carolina Index, Vol. I, Criminal Law, § 99; *S. v. Nall,* 239 N.C. 60, 79 S.E. 2d 354; *S. v. Smith,* 237 N.C. 1, 74 S.E. 2d 291; *S. v. Bryant,* 235 N.C. 420, 70 S.E. 2d 186; *S. v. Sears,* 235 N.C. 623, 70 S.E. 2d 907.

On a motion for nonsuit, the foregoing rule also permits the consideration of defendant's evidence which rebuts the inference of guilt when it is not inconsistent with the State's evidence. *S. v. Oldham,* 224 N.C. 415, 30 S.E. 2d 318."

And when the state's "evidence of guilt is purely negative in character, positive and uncontradicted evidence in explanation which clearly rebuts the inference of guilt and is not inconsistent with the State's evidence should be taken into consideration on motion to nonsuit." *State v. Oldham,* 224 N.C. 415, 417, 30 S.E. 2d 318, 320 (1944).

In this case there is really no conflict in the evidence for the state and that for the defendant. All three of the state's eyewitnesses testified that suddenly both defendant and the deceased had guns and were shooting at each other. The state's evidence is largely negative in that none of its witnesses could say who drew his weapon first or who shot first.[1] Defendant and four eyewitnesses testified unequivocally that the deceased first drew

---

1. Paul DeLapp testified:

"After they had words for about a minute or two, what happened then was that I saw Robert Eller, he got up and stood; he stood up. The next thing I knowed took place, the shooting was going on. Both Robert Eller and Benton was doing the shooting, both had a gun. I did not see where the guns came from.

I did not see who had a gun first. I sure didn't. I do not know who fired the first shot. I had not seen either of the guns before the shooting started and I do not know how many shots were fired. I did not see either man reach for his pocket."

Annabelle Ruff testified:

"After they had words, I seen the guns and jumped up from the table. I seen two guns and Leroy and Robert Eller had them . . . .

. . . .

I did not see either of these men get the guns out. I did not see who fired first. After I saw two guns, I jumped up from the table to get out of the way

his weapon and fired it at defendant. Thereafter defendant re-
turned the fire killing the deceased.[2]

and I got hit in the leg with a bullet. I do not know who shot me and I have no
idea how many shots were fired."

Melvin Page's testimony is summarized in the text.

2. Dan Huley testified:

"I heard Buck tell him to go get back up and sit down where he was and
Leroy, I guess, paid him no attention because he wasn't talking to his friend
anyway. So Buck said it again and again Leroy didn't pay him no attention.

That's when Buck jumped up. Leroy said, you don't tell me what to do.
Buck came out with his gun and started shooting. Leroy fell back down and
pulled the table in front of him.

I did see where Buck got the gun he shot with and he got it out of his
back pocket. At the time Buck shot his gun, Leroy pulled the table down in
front of him. Prior to the time Buck shot his gun, Leroy was not doing nothing.
He just straightened up and told Buck not to tell him what to do. The next
thing that happened was that Buck pulled the gun out of his pocket and shot at
Leroy."

Mildred Littlejohn testified:

"Leroy had not done anything whatsoever to provoke Buck to shoot at
him before Buck shot at him. I didn't see that Leroy had any gun at the time
when Buck shot at him."

Robert Carter testified:

"Buck stood up and told them to get back from the table. He said that
about twice and then he reached in his back pocket and told them to get back
again.

Buck then shot twice. When Buck reached in his back pocket, he pulled
out a gun. I think he shot Annabelle because she started hollering. I know
Buck fired two shots. I was sitting right behind him. Leroy stooped down and
started shooting too. My sister's husband got hit by a bullet when he got up to
help my sister. She got shot in the back of the foot first.

. . . .

I did not see Leroy do anything at all to make Buck shoot the gun before
Buck shot the two shots. The only thing I saw Leroy doing was talking to Mrs.
Littlejohn. He was kind of squatted down beside her and Paul DeLapp."

Nancy Lindsay testified:

"Buck fired the first shot. Leroy was not doing anything other than talk-
ing to Mrs. Littlejohn when Buck shot that shot. After Buck fired the shot,
Leroy got up and started shooting too.

The evidence for the state then is this: When the deceased was felled by defendant's shot, both men were shooting at each other. The state offered no positive evidence as to who first drew a weapon or who fired first. Defendant's evidence does not conflict with that of the state. Defendant's evidence simply explains that facet of the affray upon which the state's evidence is silent. It establishes that the deceased did indeed draw his weapon and begin shooting at defendant before defendant even drew his weapon.

Thus under the state's evidence defendant was shown to have shot a man who was shooting at him. Unless defendant drew his weapon or shot first, defendant's actions are clearly justified as being in self-defense. The state's evidence is silent, or negative, on this point. Defendant's evidence, not in conflict with that of the state, explains and clarifies this aspect of the case in defendant's favor. Therefore, considering all the evidence properly cognizable on defendant's motion to dismiss at the close of the case, I conclude this motion should have been allowed.

Justices BROCK and CARLTON join in this dissent.

---

I am kin to Buck, he and my mother were first cousins. I did know Buck before that night. I did not know Leroy before, and I had saw him one or two times but never said no words to him.

I never saw Leroy do anything to Buck but talking to cause Buck to shoot at him before Buck shot at him. All Leroy said to him was 'You don't tell me what to do.' "