### STATE v. JOHNNIE BRYANT.

(Filed 16 April, 1952.)

**1. Criminal Law § 52a (1)—**

Defendant's evidence favorable to the State or which explains or makes clear the State's evidence is properly considered in passing upon defendant's motion to nonsuit.   G.S. 15-173.

**2. Larceny § 7—**

The State's evidence implicating a person in the larceny of chickens, with testimony, unobjected to, of a statement of such person to the effect that he stole the chickens in company with defendant, together with defendant's statement that he was with such person on the nights in question, except for a short time, *is held* sufficient to be submitted to the jury in a prosecution for larceny.

**3. Criminal Law §§ 35, 52a (1), 78c—**

Where hearsay evidence is not objected to, it may be considered by the jury and taken into account in determining the sufficiency of the evidence to be submitted to the jury.

**4. Criminal Law § 34e—**

Where defendant denies an accusation of guilt against him, testimony as to the accusation is incompetent.

**5. Larceny § 9—**

Where each of several warrants charges the larceny of chickens from different people on specified dates, a verdict of guilty "of larceny of chickens" is not too indefinite to support judgment, and cannot be held prejudicial when sentence on each count runs concurrently.

APPEAL by defendant Johnnie Bryant from *Stevens, J.,* at December Term, 1951, of SAMPSON.

Criminal prosecution upon four separate warrants each upon an affidavit charging that at and in Sampson County, on given date, Elijah Cooper and Johnnie Bryant did take, steal and carry away, and convert to their own use: In No. 1263, on 14 June, 1951, "about thirty chickens" from premises of W. C. Westbrook; in No. 1264, on 14 June, 1951, "about 14 chickens" from premises of Leon Wilson; in No. 1265, on 4 July, 1951, "18 chickens" from premises of A. B. Bizzelle; and in No. 1266, on .... June, 1951, "about 35 or 40 chickens" from premises of Craven Lee; in the first three cases of value less than $50.00, and in the fourth of value about $50.00, contrary to the form of the statute, etc.

The warrants were issued by a justice of the peace, who finding probable cause, bound the defendants, Elijah Cooper and Johnnie Bryant, over to the Recorder's Court of Sampson County for trial.   And upon trial in the Recorder's Court on 10 July, 1951, defendants were each found "Guilty" in each case, and sentenced to "eighteen months in jail

and assigned to work the roads as provided by law," the sentences to run concurrently.

Defendant Johnnie Bryant appealed therefrom to Superior Court, where the cases as against him were consolidated for the purpose of trial without objection, and were so tried.

Upon the trial in Superior Court as witnesses for the State: W. C. Westbrook testified that he lost about 30 chickens, New Hampshire Reds, on night of 13 June,—missing them on morning of 14th; Mrs. Leon Wilson testified that she lost 14 chickens, Barred Rocks, about 13 June, supposing they were taken the same night as Mr. Westbrook's; A. B. Bizzelle testified that about 20 chickens were taken from him about 4 July; and Craven Lee testified that sometime in first part of June, the exact date he does not know, 35 or 40 chickens, New Hampshire Reds, were taken from his premises.

And their testimony tends to show that Elijah Cooper farmed for Mr. Bizzelle—living about three-quarters of a mile from him, and that defendant Bryant lived about a mile and a quarter from Craven Lee.

The State did not offer Elijah Cooper as a witness, and he did not testify at the trial in Superior Court.

But a deputy sheriff, as witness for the State, testified, without objection, to substantially these facts: That he was called to home of A. B. Bizzelle on 5 July,—there having been some chickens stolen there the night before; that he found in the Bizzelle chicken yard a corner post broken down, and two sets of men's shoe tracks going into the chicken house, and out of the chicken yard; that he first went to Johnnie Bryant's house in the afternoon, and found that he was in bed; that in reply to question as to where he was the night before, Johnnie said he and Elijah Cooper went to his brother's in Angier,—that they were out all night and did not get back until 10 or 11 o'clock that day; that he asked Johnnie about the chickens, and he said he knew nothing of the chickens; that, nevertheless, he, the deputy sheriff, carried Johnnie to Mr. Bizzelle,— there where the two tracks led into, and out of the yard; that he placed Johnnie's foot into two or three or four of the tracks; that it did not fit one of the tracks, but one fitted perfectly; that he then took Elijah Cooper to the Bizzelle place and put his foot into the other set of tracks and it fitted perfectly; that Elijah Cooper, in absence of Johnnie Bryant, then said he was going to tell the truth about it,—and stated that he and Johnnie Bryant not only got the chickens from Mr. Bizzelle's place on the night of 4 July, 1951, but that they went into the chicken houses of Mr. Westbrook and Mrs. Wilson on 14 June, 1951, and into the chicken house of Mr. Lee on 28 June, 1951, and took chickens, and on each occasion carried the chickens to Dunn, N. C., and sold them to a named individual; that the statement of Elijah Cooper was later reduced to writing

and read to, and in the presence of Johnnie Bryant, and he, Johnnie, "still denied it," and has "at all times denied it"; and that at the trial in the Recorder's Court, Elijah Cooper told on cross-examination that "Johnnie Bryant had nothing to do with it."

And the deputy sheriff further testified that he only took Johnnie Bryant to the Bizzelle place; that he would say that the size of Johnnie Bryant's foot "looks like about a 9 or 10," that is about the average size foot of about 65 to 70 per cent of the men in Sampson County; and that he was "not swearing that his foot made that track."

Defendant, Johnnie Bryant, reserving exception to denial of his motion for judgment as of nonsuit when the State first rested its case, testified, in detail, and offered testimony of others that he was with Elijah Cooper all through the night of 4 July, 1951, except for an hour or an hour and a half when Elijah Cooper left him and others at "the colored boys' cafe at Newton Grove," but he denied that he had anything to do with the taking of the chickens, or that he knew that Elijah Cooper had taken them; and that "he was not hooked up with Elijah Cooper on these different nights getting chickens."

Defendant Johnnie Bryant renewed his motion for judgment as of nonsuit at the close of all the evidence. The motion was denied, and he excepted.

The jury returned a verdict "that said Johnnie Bryant is guilty of larceny of chickens."

Judgment: Confinement in the common jail of Sampson County for a period of eighteen months and assigned to work the roads as provided by law.

Defendant appeals therefrom to Supreme Court and assigns error.

*Attorney-General McMullan, Assistant Attorney-General Bruton, and Robert B. Broughton, Member of Staff, for the State.*

*David J. Turlington, Jr., for defendant, appellant.*

WINBORNE, J. I. For error in the trial in Superior Court, appellant stresses in the main his exception to the overruling of his motion for judgment as of nonsuit aptly renewed at the close of all the evidence. G.S. 15-173.

Such a motion made under the provisions of G.S. 15-173, formerly C.S. 4643, serves, and was intended to serve, the same purpose in criminal prosecutions as is accomplished by G.S. 1-183, formerly C.S. 567, in civil actions. *S. v. Fulcher,* 184 N.C. 663, 113 S.E. 769. Thus in considering such motion in a criminal prosecution, as in a civil action, the defendant's evidence, unless favorable to the State, is not to be taken into consideration, except when not in conflict with the State's evidence, it may be used

to explain or make clear that which has been offered by the State. See *Rice v. Lumberton, ante,* 227, where the authorities are assembled.

Therefore, taking the evidence offered by the State and so much of defendant's evidence as is favorable to the State, or tends to explain and make clear that which has been offered by the State, in the light most favorable to the State, this Court is of opinion, and is impelled to hold that there is sufficient evidence to take the case to the jury on the question of the guilt or innocence of defendant on all, or on each of the offenses with which he stands charged.

While some of the evidence offered by the State might have been excluded as hearsay, *Bunting v. Salsbury,* 221 N.C. 34, 18 S.E. 2d 697, it was admitted without objection, and hence under the rule may be considered with the other evidence and given such evidentiary value as it properly may possess. *S. v. Fuqua,* 234 N.C. 168, 66 S.E. 2d 667; *Maley v. Furniture Co.,* 214 N.C. 589, 200 S.E. 438. Under another rule of evidence statements made in the presence and hearing of the accused implicating him in the commission of a crime, to which he makes no reply, are competent against him as implied admissions. *S. v. Suggs,* 89 N.C. 527. *S. v. Wilson,* 205 N.C. 376, 171 S.E. 338; *S. v. Hawkins,* 214 N.C. 326, 199 S.E. 284; *S. v. Gentry,* 228 N.C. 643, 46 S.E. 2d 863; *S. v. Sawyer,* 230 N.C. 713, 55 S.E. 2d 464; *S. v. Hendrick,* 232 N.C. 447, 61 S.E. 2d 349.

But when he at the time denies the truth of the statements, this rule does not apply, and the evidence upon objection would be excluded. See Stansbury N. C. Evidence, Sec. 179; also *S. v. Herring,* 200 N.C. 308, 156 S.E. 538; *Hedgecock v. Ins. Co.,* 212 N.C. 638, 194 S.E. 86; *S. v. Peterson,* 212 N.C. 758, 194 S.E. 498.

II. Appellant also assigns as error the denial of his motion to set aside the verdict, and the rendition of the judgment as set out in the record. It is urged that the verdict is too indefinite to support the judgment. Probably it would have been better if the jury had spelled out the verdict more specifically. But as the charge in each of the four cases is larceny of chickens, a verdict of guilty in any one of the cases would be guilty of larceny of chickens. And since the court has imposed only one sentence, prejudicial error is not made to appear.

No error.