### STATE v. ROBERT LEE CASE.

(Filed 12 October, 1960.)

**1. Criminal Law § 84—**

Slight variances in corroborating testimony do not render such testimony inadmissible, it being for the determination of the jury whether or not the testimony of one witness does in fact corroborate that of another.

**2. Criminal Law § 111—**

Where the court defines corroborating testimony and instructs the jury that certain testimony was admitted solely for the purpose of corroboration, the failure of the court to add that the jury should consider it only if the jury finds that the testimony does in fact corroborate the testimony of the prior witness, will not be held for prejudicial error, there being no expression of opinion by the court as to whether the testimony of the witness did or did not corroborate the previous testimony.

**3. Criminal Law § 72—**

The statement of one defendant in the presence of the other tending to implicate such other defendant in the commission of the crime is competent as an implied admission by such other defendant when the circumstances are such as to call for a reply and such other defendant remains silent.

**4. Criminal Law § 90—**

Where evidence is competent against one defendant but incompetent against another, such other defendant may not complain of its general admission when he fails to object or request that the admission of the evidence be limited.

**5. Criminal Law § 62—**

The testimony of witnesses, admitted to be experts, as to the mental capacity of defendant, based upon their examination of defendant pursuant to law to determine whether or not defendant was mentally competent to stand trial, is competent as substantive evidence.

**6. Criminal Law § 162—**

The admission of testimony cannot be held prejudicial when defendant thereafter makes admissions of the same import.

**7. Criminal Law § 77—**

Testimony of an expert who examined defendant as provided by law to determine whether or not he was mentally competent to stand trial is not privileged, and the defendant may not assert that the physician-patient relationship existed in regard thereto.

**8. Criminal Law §§ 107, 156—**

Inadvertence in stating the contentions or in recapitulating the evidence must be called to the attention of the court in time for correction.

**9. Criminal Law § 161—**

Defendant may not complain of the admission of testimony brought out by his counsel in the cross-examination of the State's witnesses.

**10. Criminal Law § 112—**

The charge of the court that the State contended that certain evidence tended to show and "does show" certain facts will not be held prejudicial when, construing the charge contextually, it is apparent that the court was merely giving the contentions of the State that the evidence tended to show and did show certain facts without expressing an opinion on the part of the court as to what the evidence showed.

**11. Criminal Law § 155—**

An assignment of error to the admission of evidence cannot be sustained when the defendant has failed to make any objection when the evidence was admitted.

APPEAL by defendant, Robert Lee Case, from *Hooks, Special Judge,* 4 April 1960 Special Criminal Term, of GASTON.

This is a criminal action in which Robert Lee Case and William Shedd, Jr., alias Willie Shedd, Jr., were jointly indicted in a bill of indictment charging that each of them did unlawfully, wilfully and feloniously rape, ravish and carnally know Janette Haynes Black, a female, forcibly and against her will.

The State's evidence tends to show the following facts:

That C. G. Black and his wife, Janette Haynes Black, and their two sons, Dennis Gray Black, age 13, and C. G. Black, Jr., age 10, live on Route 4, Lincolnton, North Carolina, in Lincoln County, about one-half mile from Crouse. That C. G. Black on 3 January 1960 and at the time of the trial was employed by Carolina Freight Carriers as a truck driver. On the above date, which was a Sunday, Mrs. Black and the boys came home from church around noon. Mr. Black did not accompany his family to church that Sunday because he was expecting his employer to call any moment instructing him to drive a truck on a trip. About 4:00 p.m., while Mr. and Mrs. Black and their sons were watching television in the den of their home, someone knocked at the front door. Dennis, the 13 year-old son, was sent to the door. The party at the door, according to Dennis' testimony, said, "he wanted to speak to my daddy." When Mr. Black went to the door and opened it, the defendant pointed a gun at him and said, "Back up, buddy." There was no one with Case at the time Mr. Black went to the door. Case then said to Mr. Black, "I mean business, buddy," and entered the living room of the Black home. Mrs. Black came into the living room about that time to see what was happening. Case directed Mr. Black to lie down in his den which was off the living room. Case ordered Mrs. Black to lie down on the floor in the den and the boys to sit in chairs. Case then went to the front door and immediately thereafter the defendant Shedd came into the den. Case gave the gun to Shedd and said to him, "Hold it on them." Shedd held the gun on them while Case cut the cords from venetian blinds in the living room and used them to tie the hands and feet of Mr. Black and to tie the boys in the chairs. Then they robbed both Mr. and Mrs. Black of all the money they had in their respective pocketbooks. Mr.

Black testified that $43.00 or $44.00 was taken from his wallet. Mrs. Black testified that she had $23.00 or $24.00 in her pocketbook and the defendants took all of it. Case then said he was going to take Mrs. Black with him for protection. Mr. Black begged him to take him instead. Case then ordered Mrs. Black to get up. She got on her knees and said, "I don't believe I can get up," and Case said, "You better get up if you want to live." Then Case caught her by the arm and she got up while Case held the pistol in her side. Mrs. Black had on bedroom shoes at the time and she requested the defendants to let her put on some shoes. Case objected, but Shedd said, "She'll need a coat." Shedd accompanied her into the bedroom where she put on shoes and also obtained a coat. She was abducted from the home by the defendants at the point of a gun and was put in an automobile which had been parked near the house with the motor left running. Mr. Black testified: "If either one of them were drinking I didn't know it."

Before leaving the house with Mrs. Black, Case cut the wires to the telephone and cut the cord to the receiver and the mouthpiece. Before taking Mrs. Black from the house he said, "I'll put her out down here at the bottom of the hill."

Case drove the car; Mrs. Black was put in the middle of the front seat of the car between Case and Shedd. The car was driven for about an hour in and around Dallas, Lowell and Spencer Mountain. The car was then driven on a dirt road that ended near the river in the vicinity of Spencer Mountain, where Case had sexual intercourse with the prosecuting witness, then Shedd had sexual intercourse with her, after which Case again had sexual intercourse with her; and according to the evidence, each of these acts was accomplished by force and against her will. Each time Case had sexual intercourse with the prosecuting witness, Shedd was standing beside the car with the pistol in his hand, and Case stood in a similar position with the pistol while Shedd had sexual intercourse with her.

According to the evidence, before Case had sexual intercourse with the prosecuting witness he threatened her life unless she cooperated; she resisted to such extent that he hit her on the side of the head four or five times.

Mrs. Black, after these criminal assaults, was told that they were going to tie her up and leave her in the woods. The defendants went to the rear of the car and opened the trunk; they talked for a while in such low tones Mrs. Black could not hear what they were saying. Thereafter, she was required to go some 75 feet into the woods, about 12 feet from the bank of the river. Her mouth

was filled with rags, and a gag was tied over her mouth and she was tied to a tree. Case then told her if she didn't get loose in sixteen seconds he was going to shoot her. She got one hand loose. Shedd suggested that they take her and leave her tied up in a vacant farm house nearby. They drove her to the farm house and found it occupied. They then drove to Cramerton and around Spencer Mountain and back near the place where the original assaults occurred. Case again forced her to have sexual intercourse with him and so did Shedd, and thereafter Case forced her to have sexual intercourse with him a fourth time. Case tore the brassiere off Mrs. Black; it was later thrown from the car and was found the next day by the officers.

About 7:45 p.m. on 3 January 1960, the defendants let Mrs. Black out of the car somewhere on the road between Spencer Mountain and Lowell. She was picked up later by a Mr. Palmer and taken to the Lowell police station. Mrs. Black was immediately thereafter taken to the Gaston Memorial Hospital in Gastonia.

The defendant Shedd was arrested almost immediately thereafter. Case was arrested at 2:00 a.m. on the following Thursday in Cleveland County. The green 1953 Chevrolet, the automobile which Case and Shedd were using and which belonged to one Jean Griffin, one of Case's girl friends, was located by the officers, and two pieces of white cotton cloth were found in the trunk of this car. Evidence introduced in the trial below tended to show that the strips of cloth used in the gagging of Mrs. Black at the time Case tied her to the tree were torn from the cloth found in the car driven by Case on the afternoon of 3 January 1960.

H. J. Auten, a police officer, testified that while talking to Shedd and Case together, the defendant Shedd said he was with Case. This was four or five days after the alleged rape occurred. The officer further testified that he talked to Case the same day he was arrested; that Case stated to him that he did enter Mrs. Black's home and that he did at the point of a gun take her out; that he did tie up Mr. Black and the two boys. He stated that he went in Jean Griffin's car which he had borrowed; "that he did have intercourse with Mrs. Black four times and that he had gotten himself in a hell of a fix and in a lot of trouble."

Before Case was apprehended, this officer testified that Shedd identified the pistol which was used on this trip and said it was his gun. Shedd then stated in detail to this officer what occurred on the Sunday afternoon of 3 January 1960 and his statement was substantially in accord with that of the prosecuting witness with

respect to what they did at the Black home and where they went after leaving there, including the acts of sexual intercourse with Mrs. Black and her efforts to resist them. This evidence was offered against the defendant Shedd only.

The State offered other testimony, including numerous witnesses who testified to the good character of both Mr. and Mrs. Black.

The defendants did not testify in the trial below but offered evidence as to the low mentality of the defendant Shedd and testimony tending to show that the appellant Case consumed a pint of whiskey on Sunday morning, 3 January 1960.

The jury found William Shedd, Jr., guilty of rape, with recommendation for life imprisonment, and Robert Lee Case guilty of rape as charged in the bill of indictment.

The defendant Shedd was given a sentence of life in the State's Prison at Raleigh from which he did not appeal.

The defendant Case was given a sentence of death. He appeals, assigning error.

*Attorney General Bruton, Asst. Attorney General Glenn L. Hooper, Jr., for the State.*
*O. A. Warren for defendant Case.*

DENNY, J.  The appellant's first assignment of error is to the admission of testimony of the State's witness Palmer as to what Mrs. Black told him after he picked her up and while they were on the way to the Lowell police station; and, that the court further erred in stating to the jury that, "Corroborate means to bolster up or to strengthen. It is not substantive testimony — that is, testimony proving any fact within itself."

Mr. Palmer testified that Mrs. Black stated to him "that she had been tied up to a tree, and had been given fifteen seconds to live or to get loose — if she didn't they'd come back and kill her."

Slight variances in corroborating testimony do not render such testimony inadmissible. *S. v. Walker,* 226 N.C. 458, 38 S.E. 2d 531; *S. v. Litteral,* 227 N.C. 527, 43 S.E. 2d 84. As to the meaning or effect of corroborating testimony, the definition of the word "corroborate" is given in Black's Law Dictionary, 3rd Edition, at page 444, as meaning "To strengthen; to add weight or credibility to a thing by additional and confirming facts or evidence," citing *Lassiter v. R. R.,* 171 N.C. 283, 88 S.E. 335.

In the last cited case our Court said: "The approved definition of the verb 'corroborate' is '(1) To make strong or to give additional

strength to; to strengthen. (2) To make more certain; to confirm; to strengthen.' "

In the instant case, while the court did instruct the jury at the time the above evidence was admitted that this evidence was offered only as corroborating the testimony of Mrs. Black, the court did not add the usual instruction, to wit, "if it does so corroborate her testimony." On the other hand, there was no intimation by the court as to whether or not in its opinion the testimony of the witness did corroborate the testimony of Mrs. Black. It is always a question for the jury to determine whether or not the testimony of one witness does corroborate the testimony of another witness. *Lassiter v. R. R., supra.* This assignment of error is overruled.

Assignment of error No. 2 is based on exceptions Nos. 13 and 14. These exceptions are directed to the testimony of H. J. Auten as to the statements made by the defendant Shedd in the presence of the defendant, appellant, Robert Lee Case, without first determining whether the defendant Case had denied or admitted the statements of the defendant Shedd.

It appears from the record that the only statement Shedd made to Auten while Shedd and Case were together, was that "he (Shedd) was with Case."

In the case of *S. v. Bryant,* 235 N.C. 420, 70 S.E. 2d 186, this Court, speaking through *Winborne, J.,* now *C. J.,* said: " * * * statements made in the presence and hearing of the accused implicating him in the commission of a crime, to which he makes no reply, are competent against him as implied admissions. *S. v. Suggs,* 89 N.C. 527; *S. v. Wilson,* 205 N.C. 376, 171 S.E. 338; *S. v. Hawkins,* 214 N.C. 326, 199 S.E. 284; *S. v. Gentry,* 228 N.C. 643, 46 S.E. 2d 863; *S. v. Sawyer,* 230 N.C. 713, 55 S.E. 2d 464; *S. v. Hendrick,* 232 N.C. 447, 61 S.E. 2d 349." This assignment of error is overruled.

These defendants were sent to Dorothea Dix Hospital in Raleigh for examination, as provided by law, to determine whether or not they were mentally competent to stand trial upon the charge on which they had been indicted.

Assignment of error No. 3 is based on exception No. 28 which challenges the testimony of Dr. Andrew L. Laczko, a psychiatrist on the staff of the Dorothea Dix Hospital, on the ground that the testimony about to be offered would not be admissible as substantive evidence. Thereafter, Dr. Laczko, without further objection, testified that in the course of his examination of the defendant Shedd that Shedd told him, " 'I am being charged with rape, kidnapping and possibly highway robbery.' As for the events that took place, he stated that

on a Sunday — he did not specify the date — that he and his uncle, whose name was mentioned as Mr. Case — proceeded to a woman's house, claiming he did not know the location of the house as far as the postal address is concerned. He said without applying any force all three of them, he, Mr. Case, and this lady returned to the car; and Shedd stated to me that he had sexual intercourse with this lady without forcing her to do so."

The above statements appear to have been made voluntarily by Shedd, and no objection having been interposed to the admission thereof, when admitted they were competent as against him. Where testimony incompetent as to one defendant is admitted without objection and without request that its admission be limited, an exception thereto will not be sustained. S. v. Summerlin, 232 N.C. 333, 60 S.E. 2d 322; S. v. Hendricks, 207 N.C. 873, 178 S.E. 557; Rules of Practice in the Supreme Court, Rule 21, 221 N.C. at page 558.

No objection or exception was interposed to the admission of Dr. Laczko's testimony with respect to what Shedd told him, by either defendant; neither was there any request by the defendant Case that such evidence be admitted only as against Shedd. It would have been error to admit Shedd's statement or statements against Case, had he requested that they be limited as against Shedd only.

Dr. Laczko and Dr. Walter A. Sykes were offered as witnesses by the State with respect to the mental capacity of each of the defendants. It was stipulated by counsel for Shedd and counsel for the appellant Case that these physicians were experts in the field of psychiatry. Both of them testified that they examined the defendants and that Shedd was on the borderline of intelligence; that Case had an I. Q. of 82, "which is within the range of a dull, normal intelligence." Each of these doctors testified he had an opinion satisfactory to himself as to whether or not each of the defendants knows the difference between right and wrong, and that in his opinion each of the defendants knew the difference between right and wrong. Evidence with respect to the I. Q. of the appellant Case was brought out on cross-examination by the appellant's counsel. Certainly, the evidence of these experts with respect to the mentality of the defendants was admissible as substantive evidence. S. v. Grayson, 239 N.C. 453, 80 S.E. 2d 387; S. v. Litteral, supra.

Even if the statements made by Shedd to Dr. Laczko, in which he referred to his codefendant Case, had been duly objected to by the defendants and an exception duly entered, in light of the admissions made by both defendants theretofore to Officer Auten, the

admission of such statement or statements would not in our opinion be sufficiently prejudicial to warrant a new trial. Furthermore, Case is in no position to challenge the admission of this testimony on the ground of the physician-patient relationship existing between the witness and Shedd. Exception No. 28 is overruled.

By exceptions Nos. 68, 69, 70, 71 and 74, the appellant attacks the court's review of the testimony of the psychiatrists. The evidence reviewed was evidence admitted without objection. Moreover, much of this evidence reviewed by the court below was brought out by the appellant's counsel on cross-examination of the psychiatrists. "Inadvertence in stating the contentions or in recapitulating the evidence must be called to the attention of the court in time for correction. After verdict the objection comes too late." *S. v. Holder,* 252 N.C. 121, 113 S.E. 2d 15; *S. v. Saunders,* 245 N.C. 338, 95 S.E. 2d 876; *S. v. Stone,* 241 N.C. 294, 84 S.E. 2d 923; *S. v. Ritter,* 239 N.C. 89, 79 S.E. 2d 164; *S. v. Lambe,* 232 N.C. 570, 61 S.E. 2d 608. There is no merit in these exceptions and they are overruled.

The appellant's ninth assignment of error is directed to exceptions Nos. 47, 49, 52, 53, 54, 55, 57, 58, 59 and 62, and each one of these exceptions is directed to the phrase used by the court in stating the contentions of the State, to wit, "The State has offered evidence in this case, from which it argues and contends that it tends to show (and does show)." After each of these portions of the charge, there followed a recapitulation of certain evidence, upon which the State relied and contended that such evidence tended to show and did show certain things.

While in our opinion it is preferable for the court in stating the contentions of the State or of a defendant to say that the State or the defendant argues and contends "that the evidence tends to show," without adding the words "and does show"; however, when the phrase used by the court, and to which the defendant objects, is read in context, it shows in our opinion that the court was merely giving the contentions of the State to the effect that the State contends the evidence does show thus and so and was not expressing an opinion on the part of the court as to what the evidence did show. Moreover, nothing appears in the appellant's brief or in the record to indicate that the trial judge emphasized the words "and does show" in any manner so as to disassociate them from the context of the "contention phrase," to wit, "that the State argues and contends that this evidence tends to show and does show." This assignment of error is overruled.

The tenth assignment of error is based on exceptions Nos. 50 and

51. These exceptions were taken to the court's review of the evidence of Mr. C. G. Black in which Mr. Black testified that Case had been to his home some twelve or eighteen months previously while Black was working near his garage; that Case asked him if he could get some water and Mr. Black replied, "Yes, Sir, help yourself, there is a spigot right there." Mr. Black further testified, "He (Case) was on the roads working as a trusty, I believe." Defendant's counsel, on cross-examination, examined Mr. Black at some length about Case having been on the chain gang. None of the evidence with respect to the previous service on the roads, reviewed by the court in recapitulating the evidence to the jury, was objected to by appellant when it was admitted; and, as pointed out above, much of the evidence to which the appellant now objects as having been inadmissible and prejudicial was brought out by his own counsel in cross-examining Mr. Black. This assignment of error is without merit and is overruled.

The record before us contains many additional assignments of error based on numerous exceptions which we have not discussed. However, we have carefully examined and considered these additional assignments of error and in our opinion they present no error sufficiently prejudicial to justify us in awarding a new trial.

The verdict and judgment of the court below will be upheld.

No error.