STATE OF NORTH CAROLINA v. THOMAS HARRAL GREENE, JR.

No. 82

(Filed 12 May 1971)

1. **Criminal Law § 161— assertion of errors on appeal**

    An error asserted on appeal must be based upon an appropriate exception duly taken and shown in the record. Rules of Practice in the Supreme Court Nos. 19 and 21.

2. **Criminal Law § 166— the brief — abandonment of assignments of error**

    Even though based upon exceptions duly noted in the record and preserved in the statement of the case on appeal, assignment of error not set out in the appellant's brief, or in support of which no reason or argument is stated or authority cited, is deemed abandoned. Rule 28.

3. **Criminal Law § 164— denial of nonsuit motion at close of State's evidence — waiver by defendant**

    The denial of defendant's motions for nonsuit at the conclusion of the State's evidence in chief was waived by the defendant's introduction of evidence and is not available to him on appeal. G.S. 15-173.

4. **Criminal Law § 164— exceptions to denial of motions for nonsuit — form of assignments of error**

    The denial of defendant's two separate motions for judgment of nonsuit as to the charge of first degree murder and as to the charge of the indictment generally should have been the subjects of separate assignments of error.

5. **Criminal Law § 104— motion for nonsuit — conflicts in the evidence**

    Conflicts in the evidence present questions for the jury and do not supply a basis for a judgment of nonsuit.

6. **Criminal Law § 104— motion for nonsuit — consideration of evidence**

    Upon motion for judgment of nonsuit, the evidence must be considered in the light most favorable to the State, and the State is entitled to every reasonable inference to be drawn therefrom in its favor.

7. **Homicide § 21— homicide case — sufficiency of evidence**

    Eyewitness' testimony that she saw the defendant point a pistol at the deceased and fire when the deceased was standing five feet away with his hands outstretched and empty and his palms turned upward, *held* sufficient to support a jury finding of defendant's guilt of first degree murder.

8. **Criminal Law § 113— instructions on the evidence — plea of self-defense**

    There is no merit to defendant's contention that the trial judge should have reviewed defendant's evidence relating to his plea of self-defense, where (1) the court's summary of the State's and the defendant's evidence was fair and impartial and (2) defendant did not request any addition or correction to the charge.

9. **Criminal Law § 114; Homicide § 27— homicide case — instructions — expression of opinion by trial court**

Trial court's statement, in his further instructions on manslaughter, that "I am referring, of course, to such cases as the one that we are now concerned with," was not an expession of opinion but was merely an attempt to eliminate involuntary manslaughter from his definition. G.S. 1-180.

APPEAL by defendant from *Godwin, S.J.,* at the 9 October 1970 Session of DURHAM, heard prior to determination by the Court of Appeals.

The defendant was indicted for the murder of David Core. He was found guilty of manslaughter and sentenced to a term of 20 years in the State's prison. He does not deny that he shot and killed Core at about midnight on the night of 30 April-1 May 1970 in a parking lot on the campus of North Carolina Central University. His contention is that he shot in self defense. The undisputed evidence is that Core died almost instantly as the result of a pistol bullet wound in the upper chest, the shot being fired at a sufficiently close range to leave powder burns about the entrance of the wound, the bullet passing through the body and puncturing the aorta.

At the time of the shooting, the defendant was a student at the university, residing with his parents in Durham. The deceased, also a resident of Durham, was not a student, but was in the company of his date for the evening and another couple, the two girls being students.

Core's date, Artie McKesson, a witness for the State, testified: She was an eyewitness of the shooting, being six or seven feet away and approaching the two men when the shot was fired. She spent the afternoon with Core, he brought her back to the dormitory at 7 p.m. and at approximately 9:30 p.m. returned, took her out in his car to get something to eat, after which they went back to the dormitory, where the other couple joined them, and were sitting in the car in the parking lot discussing where they would go next, Core being in the driver's seat. At that time the defendant and his companions drove up and parked parallel to the Core automobile. Immediately, the defendant, addressing Core, asked, "Are you the man I had an argument with?" The defendant's companions identified Core as the other participant in the earlier argument. After some

State v. Greene

words, Core said to the defendant: "Man, forget about that. It has been over an hour ago." The witness, not knowing anything about the earlier encounter, became alarmed by the conversation. She ran into the dormitory to request that the campus police be called, which was done, and then ran back to the parking lot. As she approached the two men, they were standing outside of their respective vehicles, facing each other and approximately five feet apart. She saw the defendant raise his hand, point his pistol at Core's chest and fire. Core immediately fell backward. Just prior to the shot, Core's hands were out in front of him, palms upward and empty. He did not have on a jacket, had no weapon in his belt and no bulge in his trouser pockets indicating the presence of a weapon. At no time, while in Core's presence, did she observe a weapon of any kind in his possession or in his automobile. Prior to this occurrence, she had never seen the defendant.

All of the evidence is to the effect that neither the defendant nor Core had been drinking and that they were not acquainted with each other.

When the investigating police officers arrived, a crowd had assembled, Core's body was lying where he had fallen, and the defendant, whose car was parked some six feet from the automobile of Core, approached the officers who took him into custody and carried him to the police station. There they searched him and a .38 caliber revolver, holding six bullets, one of which had been fired, was found stuck in the defendant's belt under his jacket. The officers observed no wounds upon the person of the defendant and saw no weapon on the body of Core, in his automobile or in the area where his body lay. Greene was cooperative with the officers and apparently made no effort either to depart from the scene or to hide his weapon.

The defendant's father testified that he was out of the city when this shooting occurred, that the car and the pistol used by the defendant belonged to the father, the car was used as a family vehicle and the pistol, fully loaded, had been left in the glove compartment according to custom.

The testimony of the defendant and his witnesses was in virtual diametric conflict with that of Artie McKesson. It was to this effect:

At approximately 9 p.m. (the campus security officer, who testified for the State, placed this incident at approximately 8 p.m.) the defendant and a group of friends were in another parking lot on the university campus. Core and some male companions drove up and parked near the defendant's automobile. The groups in the two vehicles were not acquainted. Core accosted the girls in the defendant's group, they making no reply. An argument between Core and the defendant ensued. Core struck the defendant and knocked him down. The campus security officer arrived thereupon and, ascertaining that Core was not a student of the university, requested him to leave the campus, which Core did. In the course of this encounter no weapon was observed in the possession of either participant.

The defendant and his friends did not know of any reason or justification for this assault by Core. Thereafter, the defendant was driven to his home by his friends in their automobile. He obtained the key to his father's car from his mother and, after remaining at home for a while with his friends, drove his father's car to a hotel where he and his date picked up another couple. After driving about, they returned to the parking lot on the campus where the shooting occurred. There he noticed the Core automobile. He drove up near it and stopped.

Addressing Core, the defendant said: "What happened? Aren't you the same guy that hit me earlier tonight?" Core acknowledged that he was and announced that he would do it again. Thereupon, Core got out of his car but the defendant remained seated in his own. With much vulgarity, Core stated that since the defendant had brought the matter up again, if he would get out of his car the two would "settle it right now once and for all." The defendant stated he would not get out of the car or fight and just wanted to know what was wrong. After Artie McKesson ran to her dormitory to summon police assistance, the girls in the defendant's car went into their dormitory at the suggestion of his male companion.

Upon the defendant's refusal to get out and fight, Core returned to his car, started it, turned around in the parking lot and stopped again beside the defendant's car. Core got out, announcing that he was going to finish the matter "right now," reaching under the seat of his vehicle out of the view of the defendant. Core then went over to the defendant's car, grabbed

the door handle with one hand and lunged toward the defendant, who leaned over away from Core. While trying to fight Core off, he managed to open the glove compartment, took the gun and fired without aiming, Core's head being then inside the defendant's car. The defendant did not get out of his car until after he had shot Core. He did not know the pistol was in the glove compartment until he opened it, though he had seen the pistol there before.

No statement made by the defendant to any investigating officer was offered in evidence. The defendant testified that he had not been looking for Core prior to the second altercation. He further testified that as Core stood outside the defendant's car, immediately prior to the shooting, he attempted to open the door with his left hand, his right hand being below the level of the door and not in the range of the defendant's vision.

*Attorney General Morgan, Assistant Attorney General Eagles, and Staff Attorney Walker for the State.*

*Pearson, Malone, Johnson & DeJarmon by W. G. Pearson II and C. C. Malone, Jr., for defendant appellant.*

LAKE, Justice.

[1]  This Court has stated repeatedly that the Rules of Practice in the Supreme Court are mandatory and that Rules 19 and 21 require that an error asserted on appeal must be based upon an appropriate exception duly taken and shown in the record. See also, Rules 19 and 21 of the Rules of Practice of the Court of Appeals, to which court this appeal was taken. *State v. Benton,* 276 N.C. 641, 174 S.E. 2d 793; *State v. Ferebee,* 266 N.C. 606, 146 S.E. 2d 666; *State v. Hudler,* 265 N.C. 382, 144 S.E. 2d 50; *State v. Strickland,* 254 N.C. 658, 119 S.E. 2d 781; *State v. Garner,* 249 N.C. 127, 105 S.E. 2d 281; *State v. Wiley,* 242 N.C. 114, 86 S.E. 2d 913; *State v. Moore,* 222 N.C. 356, 23 S.E. 2d 31. "The assignments of error must be based upon exceptions duly noted, and may not present a question not embraced in an exception. Exceptions which appear nowhere in the record except under the purported assignments of error will not be considered." 1 Strong, N. C. Index 2d, Appeal and Error, § 24.

[2]  Even though based upon exceptions duly noted in the record and preserved in the statement of the case on appeal, assign-

ments of error not set out in the appellant's brief, or in support of which no reason or argument is stated or authority cited, are deemed abandoned. Rule 28, Rules of Practice in the Supreme Court; Rule 28, Rules of Practice in the Court of Appeals; *State v. Baldwin,* 276 N.C. 690, 701, 174 S.E. 2d 526; 1 Strong, N. C. Index 2d, Appeal and Error, § 45. For this reason, had the defendant's Assignments of Error Nos. 5, 6, 7, 8 and 9 been based upon exceptions duly noted and preserved in the record, they would be deemed abandoned.

[3, 4]    In his Assignments of Error Nos. 1 and 2, the defendant contends that the Superior Court erred in denying his motions for judgment of nonsuit, both as to the charge of first degree murder and as to all charges embraced in the bill of indictment, the defendant having made such motions both at the conclusion of the State's evidence in chief and at the conclusion of all the evidence. The denial of such motions made at the conclusion of the State's evidence in chief was waived by the defendant's introduction of evidence and is not available to him on appeal. G.S. 15-173; *State v. Prince,* 270 N.C. 769, 154 S.E. 2d 897. Thus, only Assignment of Error No. 2, relating to the denial of the motions for judgment of nonsuit made at the close of all the evidence (erroneously stated in the assignment of error as made at the close of the defendant's evidence), could be considered on appeal had an exception appeared in the record. The defendant discusses in his brief only the denial of the motion for judgment of nonsuit as to the charge of first degree murder. Thus, under the rule above mentioned, so much of the assignment as relates to the denial of his motion for judgment of nonsuit as to the charge in the bill of indictment generally is deemed abandoned. Furthermore, the rulings of the trial court upon these two separate motions for judgment of nonsuit as to the charge of first degree murder and as to the charge of the indictment generally should have been the subjects of separate assignments of error. *State v. Blackwell,* 276 N.C. 714, 721, 174 S.E. 2d 534.

[5, 6]    In any event, neither branch of this assignment of error has merit. Conflicts in the evidence present questions for the jury and do not supply a basis for a judgment of nonsuit. *State v. O'Neal,* 273 N.C. 514, 160 S.E. 2d 473; *State v. Walker,* 269 N.C. 135, 152 S.E. 2d 133; *State v. Goins* and *State v. Martin,* 261 N.C. 707, 136 S.E. 2d 97. Upon such motion, it is

elementary that the evidence must be considered in the light most favorable to the State and that the State is entitled to every reasonable inference to be drawn therefrom in its favor. 2 Strong, N. C. Index 2d, Criminal Law, § 104. So considered, the evidence in the present case is ample to warrant the denial of the motion concerning the charge of first degree murder and to warrant the submission of that question to the jury.

[7]　The testimony of Artie McKesson was that she, an eye-witness, only six feet distant from the defendant and Core at the time of the shot, saw the defendant point his pistol at Core and fire when Core was standing before him with his hands outstretched and empty, the palms turned upward. A reasonable inference could be drawn from the defendant's own testimony that he, having been knocked down by Core, went to his home, armed himself, returned to the campus in search of Core with intent to renew the quarrel and obtain revenge and did renew the quarrel for that purpose some two hours or more after the first altercation had ended. Upon motion for judgment of non-suit made at the conclusion of all the evidence, so much of the defendant's evidence as is favorable to the State is taken into consideration. *State v. Cutler,* 271 N.C. 379, 156 S.E. 2d 679; *State v. Prince, supra; State v. Mabry,* 269 N.C. 293, 152 S.E. 2d 112; *State v. Bryant,* 235 N.C. 420, 70 S.E. 2d 186.

[8]　In his Assignment of Error No. 3, the defendant asserts that the trial court erred in its charge to the jury by failing to include in its review of the evidence some of the defendant's evidence relating to his contention that he killed Core in self defense. The defendant does not except to the court's instructions as to the rules of law applicable to self defense.

In summarizing the evidence, the judge told the jury that he would not attempt to recapitulate or summarize all of it, it being the duty of the jury to remember and consider all of the evidence introduced during the trial. The court's summary of the evidence, both that of the State and that of the defendant, was fair and impartial. We find no material omission and no inaccuracy. The defendant did not direct the attention of the trial judge to any omission or inaccuracy or request any addition or correction. As Justice Moore said in *State v. Sanders,* 276 N.C. 598, 174 S.E. 2d 487: "The recapitulation of all the evidence is not required under G.S. 1-180, and nothing more is

required than a clear instruction which applies the law to the evidence and gives the position taken by the parties as to the essential features of the case. *State v. Thompson,* 257 N.C. 452, 126 S.E. 2d 58. If defendant desired fuller instructions as to the evidence or contentions, he should have so requested. His failure to do so now precludes him from assigning this as error." See also, *State v. Guffey,* 265 N.C. 331, 144 S.E. 2d 14; Strong, N. C. Index 2d, Criminal Law, § 113. There is no merit in this assignment of error.

[9] The defendant's Assignment of Error No. 4 relates to the trial court's response to a request by the jury for further instruction as to the "essential differences" between first degree murder, second degree murder and manslaughter. In the original charge, the court instructed the jury correctly as to the elements of each of these offenses. When the jury returned with the request for further instructions, the court again defined murder in the first degree, murder in the second degree and manslaughter. The defendant does not contend that there was any error in these instructions as to the applicable rules of law. Concerning manslaughter the court, in response to this request for further instructions, said: "Manslaughter, *and I am referring, of course, to such cases as the one that we are now concerned with,* is the unlawful killing of a human being without malice, express or implied, and without premeditation or deliberation." (Emphasis added.) The defendant contends that the portion of this instruction which we have italicized constituted an expression of opinion by the judge that the defendant should be found guilty of manslaughter. There is no merit in this contention.

It is, of course, error for the judge, in his charge to the jury or otherwise, to express to or in the presence of the jury any opinion as to the verdict which the jury should render. G.S. 1-180. The above quoted instruction did not violate this well settled rule. We think it clear that the court was simply eliminating from his definition involuntary manslaughter to which he had referred in the original charge, there telling the jury, correctly, that there is no evidence in this case to support a verdict of involuntary manslaughter. We do not deem it reasonably conceivable that the jury could have construed this final definition of manslaughter as an expression of opinion by the court concerning the verdict which the jury should return.

No error.