STATE OF NORTH CAROLINA v. LAWRENCE DAVIS

No. 7214SC798

(Filed 20 December 1972)

**Homicide § 21— second degree murder charge — sufficiency of evidence to withstand nonsuit**

Evidence in a murder case was sufficient to withstand defendant's motion for nonsuit where it tended to show that deceased approached the door of a store where defendant was, that deceased turned away from the door and put his hand in his pocket, that deceased turned back toward the door and defendant shot him, that there was enmity between deceased and defendant, deceased having threatened "to get" defendant, and that after the shooting police found defendant standing on the sidewalk beside deceased, defendant with a gun in his hand and deceased with a gun at his feet.

APPEAL by defendant from *Cooper, Judge,* 29 May 1972 Session of DURHAM Superior Court.

Defendant was charged in a bill of indictment, proper in form, with the murder of George Willard Andrews (Andrews) and was placed on trial for second-degree murder. He pleaded, not guilty, the jury returned a verdict of guilty of involuntary manslaughter, and the court entered judgment that defendant be imprisoned for ten years, sentence suspended and defendant be placed on probation for five years under terms and conditions set forth in the judgment. Defendant appealed.

*Attorney General Robert Morgan by Charles A. Lloyd, Assistant Attorney General, for the State.*

*Daniel K. Edwards and William Y. Manson for the defendant appellant.*

BRITT, Judge.

Defendant first assigns as error the court's failure to grant his timely made motion for nonsuit on the ground that "there was no competent evidence from which a jury could find that the Andrews named in the bill of indictment was dead or that the alleged act of the defendant was a proximate cause of any death of the man named in the bill of indictment."

The evidence presented by the State tended to show: On the morning of 21 November 1971 at around 8:30 or 9:00 a.m., Andrews in the company of one Billy Lee Phillips and one William Davis went to Allison's Grocery Store at 416 Walker Street in the City of Durham. The three men went to the store in a vehicle driven by William Davis. When they got there, they parked behind a truck which they recognized as belonging to Lawrence Davis, the defendant. Andrews, William Davis and Phillips approached the store together. As William Davis opened the door, Andrews turned, walked away from the door and put his hand in the pocket of his coat and as he turned back around Andrews was shot by defendant. State's witness Phillips testified: "Willard (Andrews) turned from there (there being in reference to the doorway of Allison's Grocery Store) and walked away from the door and put his hand in his pocket; and as soon as he turned back, bam; that was it. He was shot; that was it. Lawrence (defendant) was speaking to him and said, 'You still looking for me, you M.F.?' " Andrews made no response to defendant. Andrews was shot with a .38 Cobra Colt pistol. Phillips further testified that although he saw a gun in defendant's hand, he (Phillips) could not say whether when

Andrews turned in front of the door and put his hand in his pocket and then "came around" if he (Andrews) had a pistol or not. Andrews had shown a .25 caliber chrome-plated automatic pistol to Phillips earlier on the morning of the shooting and at that time Andrews told Phillips that he was "going to get Lawrence Davis and Bill Swain with the .25 caliber pistol."

Durham Police Officer W. Y. Poole, called to investigate the shooting at Allison's Grocery Store, testified: As he (Poole) arrived at the scene, he saw defendant standing on the sidewalk with a .38 Cobra Colt pistol in his hand. "Andrews was lying flat of his back; he (Andrews) had a bullet hole over his left eye, and he was bleeding out of his nose and from the hole. There was a .25 automatic lying between his feet." "In regard to the way the body was lying and placement of the gun, the way the person was shot, it was kinda hard to see how a gun could be laying at his feet."

The State introduced Dr. Daly, a pathologist at Duke Hospital, who testified to the following: He examined a body identified to him as George Willard Andrews on the afternoon of 22 November 1971 in the morgue at Duke Hospital. Cause of death was attributed to a gunshot wound to the brain; a bullet was found in the right occipital region. The doctor's examination disclosed that brain surgery had been performed on deceased who had lived between 12 and 48 hours after he was shot.

On cross-examination of Dr. Daly, defense counsel asked: "Doctor, you do not know of your own knowledge when Andrews was admitted to the hospital, do you?" The witness stated that he was admitted on the 21st but then conceded that he was not present when Andrews was admitted. On questioning from counsel, the witness gave detailed testimony as to his findings and opinions. Counsel then asked, "Now, was there any way you could tell from your examination how long Andrews lived after the passage of the bullet through his head, the track that you observed?" The witness answered, "Again I would say 12 to 48 hours." Later on counsel asked Dr. Daly, "Did Willard Andrews have various scars about him and on his—?" The witness then described certain scars found on the corpse and gave his opinion as to how long those scars had been there.

Considering the evidence in the light most favorable to the State, and with every reasonable inference thereon being

resolved in the State's favor, as we are required to do, *State v. Greene,* 278 N.C. 649, 180 S.E. 2d 789 (1971), *State v. Bronson,* 10 N.C. App. 638, 179 S.E. 2d 823 (1971), we hold that the evidence was more than sufficient to survive the motion for **nonsuit.**

In the second assignment of error brought forward and discussed in his brief, defendant contends that the court's jury charge as it pertained to involuntary manslaughter was erroneous. Suffice to say, we have carefully reviewed the charge and when considered as a whole, as every charge must be, we are of the opinion and so hold that it was free from prejudicial error. *State v. Munday,* 5 N.C. App. 649, 169 S.E. 2d 34 (1969). The assignment of error is overruled.

No error.

Judges PARKER and VAUGHN concur.