STATE OF NORTH CAROLINA v. SAMMY LEE MOSER

No. 114

(Filed 7 February 1978)

**1. Homicide § 21.7— second degree murder—sufficiency of evidence**
    The State's evidence was sufficient for the jury in a prosecution for second degree murder where it tended to show that defendant and the female victim occupied an apartment together; defendant was seen on the street beating the victim with a belt at 8:15 p.m.; at approximately 4:15 the following morning, a woman in defendant's apartment was heard crying for help for about 15 minutes; defendant went to the lobby of the apartment building at 5:00 a.m. and stayed there until 9:15; defendant told an officer that he had found "his wife" in the apartment and she would not respond to his calling her name; when the officer accompanied defendant to the apartment, defendant produced the key and there was no sign of forced entry; the victim's body was found in the bedroom with a hole in her right shoulder, a wound over her left eye and multiple abrasions and lacerations about the upper part of her body; a "completely mutilated" slat bottomed chair was found in the apartment; bloodstained clothing belonging to defendant was found in the apartment; and according to expert medical testimony, the victim "died of a beating."

**2. Homicide § 21.1— identification of body—sufficiency of evidence**
    In this prosecution for the murder of "Evelyn Jennings," there is no merit in defendant's contention that his motion for nonsuit should have been allowed because there was no evidence that the body found in defendant's apartment was the same body upon which the State's Medical Examiner performed an autopsy where it was not controverted that the body found in defendant's apartment was the body of Evelyn Jennings; the Medical Examiner testified that he examined "the body of Evelyn Jennings although at the time I understood the last name to be Moser"; and the Medical Examiner's confusion

about the victim's last name was caused by the fact that defendant and the victim lived together and he referred to her as his wife although they were not actually married.

APPEAL by defendant from *Wood, J.*, 20 June 1977 Criminal Session of UNION Superior Court.

Defendant was charged in a bill of indictment, proper in form, with the first degree murder of Evelyn Jennings. Upon call of the case for trial, the district attorney announced that the State would seek a verdict of second degree murder or any lesser included offense. The jury returned a verdict of murder in the second degree, and the trial judge imposed a sentence of life imprisonment.

*Rufus L. Edmisten, Attorney General, by Charles J. Murray, Assistant Attorney General, for the State.*

*Joe P. McCollum, Jr., for the appellant.*

BRANCH, Justice.

The single question for decision is whether the trial judge erred by denying defendant's motion for judgment as of nonsuit.

The often stated rules governing the sufficiency of the evidence to withstand a motion for judgment as of nonsuit are concisely stated in *State v. Price*, 280 N.C. 154, 157, 184 S.E. 2d 866, 868 (1971), as follows:

> In considering a trial court's denial of a motion for judgment of nonsuit, the evidence for the State, considered in the light most favorable to it, is deemed to be true and inconsistencies or contradictions therein are disregarded. *State v. Vincent*, 278 N.C. 63, 178 S.E. 2d 608; *State v. Overman*, 269 N.C. 453, 153 S.E. 2d 44. Evidence of the defendant which is favorable to the State is considered, but his evidence in conflict with that of the State is not considered upon such motion. *State v. Greene*, 278 N.C. 649, 180 S.E. 2d 789; *State v. Vincent*, supra. The question for the court is whether, when the evidence is so considered, there is reasonable basis upon which the jury might find that an offense charged in the indictment has been committed and the defendant is the

perpetrator, or one of the perpetrators, of it. *State v. Cutler*, 271 N.C. 379, 156 S.E. 2d 679.

Circumstantial evidence is a recognized and accepted instrumentality in the ascertainment of truth, *State v. Holland*, 234 N.C. 354, 67 S.E. 2d 272 (1951), and, as in other cases, when the sufficiency of circumstantial evidence to take the case to the jury is challenged, the court must decide whether a reasonable inference of defendant's guilt may be drawn from the circumstances. *State v. Spencer*, 281 N.C. 121, 187 S.E. 2d 779 (1972); *State v. Stephens*, 244 N.C. 380, 93 S.E. 2d 431 (1956).

[1] In instant case, the State's evidence tended to show that defendant and Evelyn Jennings (Evelyn) lived together at Monroe Rooms and Apartments in Monroe, North Carolina. About 8:00 p.m. on March 19, 1977, defendant and Evelyn left the apartments together. Defendant was carrying a belt in his hand. About 8:30 p.m. a witness heard a woman screaming and shortly thereafter observed defendant standing over a woman who was lying in the street. Defendant was beating the screaming woman with a belt, and the woman was heard to say, "I won't do it again" or "I won't see her again." Shortly after this assault, defendant and Evelyn returned to the apartments. Evelyn's left eye was bloodshot, she was crying, and "was walking bent over." About ten minutes after his return, defendant approached Amelia Wilson in the lobby of the apartments and said, "You saw me beating her with this." He at that time displayed a leather belt which was about two inches wide.

At approximately 4:15 a.m. on 20 March 1977, a woman in the apartment which defendant occupied with Evelyn was heard crying and saying, "Help me," for a period of about fifteen minutes. About 5:00 a.m. on the 20th of March, 1977, defendant came down the steps to the lobby of the apartments and remained there until about 9:15 a.m. when he left. He returned in about twenty minutes with Captain Helms of the Monroe Police Department.

Captain Helms testified that he first saw defendant at the Police Department, and defendant told him that he had found his wife in Apartment 14 of the apartments and that she would not respond to his calling her name. Officer Helms accompanied defendant to the apartment and found the door to defendant's rooms locked. There was no sign of forced entry. Defendant produced

and gave to him a key which opened the door. Upon entering the apartment, he observed "a straight back wood slat bottomed chair completely mutilated and bursted all over the floor." He then proceeded to the bedroom where he observed a black woman lying partly on the bed and partly on the floor. She was nude from the waist up and that portion of her body was covered with blood. There was a hole in her right shoulder, a wound over her left eye and multiple abrasions and lacerations about the upper part of her body. Officer Helms stated, "She was dead. She was cold." With defendant's permission, he searched and found a blood spattered long sleeved green shirt, a blood stained blue jacket, and a blood stained corduroy jacket. Defendant admitted that the blue coat was his. There was expert testimony to the effect that the victim's blood type was O and that the blood stains found on the black jacket and the green shirt were type O. Dr. Page Hudson, the State's Medical Examiner, testified that in his opinion Evelyn Jennings "died of a beating."

[2]   In the case *sub judice*, there was substantial evidence to permit the jury to draw reasonable inferences that defendant unlawfully and with malice killed Evelyn Jennings on the morning of 20 March 1977. However, defendant further contends that his motion for judgment of nonsuit should have been allowed because there was no evidence that the body found in the apartments was the same body upon which Dr. Page Hudson performed the autopsy. This contention is without merit. Initially, it is not controverted that the body found in the apartment was the body of Evelyn Jennings. Dr. Hudson, without objection, testified: "On March 21, 1977, in the morning I had an occasion to examine the body of Evelyn Jennings although at that time I understood the last name to be Moser." The record shows that defendant and Evelyn lived together in the same apartment, and defendant referred to her as his wife. This in all probability explains Dr. Hudson's initial misapprehension concerning the name of the victim.

We hold that the trial judge correctly denied defendant's motion for judgment as of nonsuit.

No error.